**BOCHETTO AND LENTZ, P.C.**
By:    George Bochetto, PA I.D. No. 27783,
          Albert M. Belmont, III, PA I.D. No. 84817
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
gbochetto@bochettoandlentz.com
abelmont@bochettoandlentz.com
Attorneys for Plaintiff Dennis R. White

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS R. WHITE<br><br>          Plaintiff,<br><br>     v.<br><br>EF HUTTON AMERICA, INC. f/k/a<br>EFH Group, Inc. f/k/a Twentyfour/seven<br><br>EF HUTTON FINANCIAL CORP. f/k/a<br>EFH FINANCIAL CORP. and<br><br>CHRISTOPHER DANIELS,<br>]<br><br>          Defendants. | : : : : : : : : : : : : : : : : : | Civil Action No. _____<br><br><br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION COMPLAINT

**AND NOW**, Comes, Plaintiff, Dennis R. White, by and through undersigned counsel,

Bochetto & Lentz, P.C., and in support of Plaintiff's Complaint against Defendants EF Hutton

America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc, EF Hutton Financial

Corp. f/k/a EFH Financial Corp. and Christopher Daniels, Plaintiff avers the following:

## I.    THE PARTIES

1.     Plaintiff Dennis R. White (**"Plaintiff" and/or "Dennis"**) is an adult individual

who resides at 1121 Brian's Way, Wayne PA 19087. Plaintiff is, therefore, a citizen of the Commonwealth of Pennsylvania.

2.        Defendant EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc (**"EFA"**) is, upon information and belief, a Colorado corporation with its principal place of business being located at One Main Street, Springfield, OH 45502. Defendant EFA is, therefore, deemed a citizen of the States of Colorado and Ohio.

3.        Defendant EF Hutton Financial Corp. f/k/a EFH Financial Corp. (**"EFC"**) is, upon information and belief, a Colorado corporation with its principal place of business being located at One Main Street, Springfield, OH 45502. Defendant EFC is, therefore, deemed a citizen of the States of Colorado and Ohio. Defendant EFC is, therefore, deemed a citizen of the States of Colorado and Ohio.

4.        As set forth more fully below, for purposes of Dennis' contract, wage, fraud and other claims, EFA and EFC are alter egos of each other. Collectively, EFA and EFC are referred to as **"EF Hutton"**.

5.        Defendant Christopher Daniels (**"Christopher"**) is an adult individual who, upon information and belief, resides in the States of Ohio and/or New York. Defendant Christopher is, therefore, a citizen of the States of Ohio and/or New York.

6.        Collectively, EFA, EFC and Christopher may be referred to as the **"Defendants"**.

## II.        JURISDICTION AND VENUE

7.        This matter is properly filed in this District as there is complete diversity between Plaintiff and Defendants.

8.        The amount in controversy exceeds the sum of $150,000, exclusive of interest fees and costs.

9.      Jurisdiction is asserted pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff, a citizen of the Commonwealth of Pennsylvania and all Defendants, who are citizens of the States of Colorado and Ohio.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial number of acts giving rise to this claim occurred in the Eastern District of Pennsylvania.

11.     This Court has both general and specific personal jurisdiction with respect to Defendants.

12.     With respect to general jurisdiction, Defendants have directed their activities to this forum, as well as nationwide, by virtue of their activities in marketing an internet-based, nationwide, digital marketplace aimed at that connecting consumers with a network of financial providers across a range of financial products and services.  See EFA Form 8-K, dated 3/16/2015, Exh. 99.1 (stating "EF Hutton Financial, Corp. a subsidiary of EFH Group Inc. (OTC: HUTN) today launched a national internet initiative at www.efhutton.com") and EFA Form 10-K, dated 5/4/2016, at p. 8 (stating "The registrant, through its subsidiary, uses a range of marketing strategies and techniques, including but not limited to: direct marketing via phone and mail, internet marketing, social media such as Twitter, Facebook and Linkedin, public relations, traditional media advertising."), copies of which are attached hereto as **Exhibits "A" and "B"**, respectively.

13.     With respect to specific jurisdiction, Defendants' agreements, promises, representations and dealings with Dennis have been negotiated, entered into and conducted through telephone calls and correspondences (whether e-mails or otherwise) directed to Dennis in the Commonwealth of Pennsylvania.

### III.    FACTUAL ALLEGATIONS

14.    Dennis has had more than thirty-five years of experience in the financial services industry.  He was a Graduate of Gannon University in 1965 and has a Post-Graduate Certificate in Investment Management from the Wharton School at the University of Pennsylvania in 1994. From 1979 to 1996, he held various executive positions related to investment consulting and marketing with the EF Hutton Consulting Group (that later became known as Shearson Lehman Hutton, then Citigroup then Smith Barney) in the investment consulting division which managed or advised on $200 billion of client assets.  From 1999 to 2005, he served as a Managing Director of Atlanta Sosnoff, an investment company managing $6 billion in assets.  Since 2006 to 2014, he was an executive with DRW & Associates, an entity engaged in strategic consulting.

15.    Defendants desired to establish a financial services company by using a well-known brand, "EF Hutton", that had been associated with the former Wall Street firm founded by Edward F. Hutton in 1904 with the well-known-tag line "When EF Hutton talks, people listen."

16.    In order to give credibility to the enterprise, in 2014, Defendants induced Dennis to associate with them and to bring with him his decades of Wall Street experience, by entering into an agreement that he would be the President of EF Hutton and would receive certain benefits in connection thereto, as set forth more fully below.  In reliance upon that agreement, Dennis helped bring Defendants' desires to fruition.  After Dennis did so and worked for two years on Defendants' behalf, Defendants failed to honor their agreement with Dennis.  Consequently, Dennis has been forced to seek re-dress through the Courts.

## IV.    FACTUAL ALLEGATIONS

17.    EFA was incorporated on or about March 8, 2007 under the laws of the State of

Colorado as a business corporation with the name Twentyfour/seven Ventures, Inc.  See EFA

Form 10-Q, dated 11/23/2015, p. 7.  A copy of the EFA Form 10-Q, dated 11/23/2015 is attached

hereto as **Exhibit "C"**.

18.    EFA is a publicly registered company under the securities laws.

19.    In the fall of 2014, EFA and Christopher offered to hire Dennis as President.

20.    The essential terms of this agreement (the **"Agreement"**) were negotiated from

August to October 2014 by Dennis and the Defendants and were set forth in an October 2014

Term Sheet exchanged by Dennis and the Defendants which promised an array of benefits

including, an annual salary, bonuses, and common stock.

21.    For purposes of the Agreement and other claims set forth herein, EFA and EFC

are alter egos of each other.

22.    EFA and Christopher did not differentiate between EFA and the wholly owned

subsidiary later formed, EFC.  It was understood that Christopher was to be the CEO of the

enterprise known as EF Hutton and Dennis was to be the President of EF Hutton. Such was also

reflected on internal organizational charts for EF Hutton.

23.    After EFC was formed, it was admitted and represented by EFA that "in

November 2014 the company engaged a new management team with extensive experience in

financial services",  see EFA Form 8-K, dated 12/22/2014, Exh. 99.1 and that "[a]s a holding

company, the registrant has no direct employees and it operates only through its subsidiary.  The

subsidiary employs six persons under various arrangements from contractors to employees.  The

subsidiary has outsourced certain functions to third-party service providers on an "as needed"

basis.  As such the subsidiary has access to dozens of staff when necessary in specialty areas such as administration, marketing and sales."  See EFA Form 10-K, dated 5/4/2016, p. 10.  A copy of the EFA Form 8-K, dated 12/22/2014 is attached hereto as **Exhibit "D"**.  One of the "six persons" referenced was Dennis.

      24.     Upon information and belief, the companies comprising EF Hutton have operated and continue to operate out of common offices, most recently at One Main Street, Springfield, OH 45502 and previously at 77 Water Street, New York, NY and 132 W. 11th Ave., Denver CO 80204.

      25.     Upon information and belief, the companies comprising EF Hutton have shared the same registered agent and address at 123 W. 11th Ave., Denver CO 80204 and J.M. Walker & Associates, 7841 South Garfield Way, Centennial, CO 80122.

      26.     The companies comprising EF Hutton are controlled in fact, and in effect, by the same individuals given that "[EFA] has no direct employees and it operates only through its subsidiary [EFC]".

      27.     The companies comprising EF Hutton share common employees, given that "[EFA] has no direct employees and it operates only through its subsidiary [EFC]".

      28.     The companies comprising EF Hutton further share common e-mail accounts and telephone numbers.

      29.     Consequently, the companies comprising EF Hutton are organized and operated as to be mere instrumentalities and/or alter egos of each other for all purposes herein and the claims asserted in this Complaint.

      30.     With respect to the Agreement, Dennis understood that Defendants agreed that he would be hired as President of EF Hutton and receive salary, bonuses, equity incentives and

other benefits in accordance with the Term Sheet for a two year term, with the exception of two terms therein. In that regard, the Parties' agreed, among other things, that, as President, Dennis was to report to the CEO, Christopher, that Dennis's was to plan strategic direction; market the firm to financial advisors and trade, assist the CEO in communicating the firm's message internally and externally, establish compensation, and policies and procedures, and that Dennis was to start after EF Hutton closed on financing sufficient to commence business operations.

31.      With respect to those two terms that were different from the Term Sheet, Dennis and Defendants agreed, at the outset, that Dennis would be paid a salary to be determined and that location was negotiable because Dennis would primarily work remotely.

32.      Based on subsequent discussions, Dennis and Defendants agreed that Dennis would be paid $250,000 a year plus other expenses (including an office) to address the tax consequences and his personal costs of going to Los Angeles to establish the West Coast office for EF Hutton providing EF Hutton a national presence from coast to coast.

33.      Dennis further understood, based on subsequent discussions with Defendants, that the parties agreed that because EFA was to be a "digital" firm, while Dennis may be located in Los Angeles, he could also telecommute and/or maintain a virtual presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida, Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location from time to time.

34.      At the outset of the parties' negotiation of the Agreement, and consistent with the terms of the Agreement thereafter agreed upon, Dennis was made director of EFA on or about August 29, 2014.

35.     In reasonable reliance upon the Agreement to make him President and the Defendants' promises, and to show his commitment to EF Hutton, in or around December 2014, Dennis also personally purchased 100 shares of stock in EFA.

36.     On or about October 28, 2014, EFA changed its name to EFH Group, Inc., effective November 20, 2014.  See EFA Form 10-Q, dated 11/23/2015, p. 7.

37.     EFC was incorporated on or about October 27, 2014 under the laws of the State of Colorado as a business corporation with the name EFH Financial Corp.

38.     EFC was to be the operating company wholly owned by EFA through which branded activities in connection with the EF Hutton brand were to be performed.

39.     Specifically, EFC, as a wholly owned subsidiary of EFA, was a "digital B2C financial platform that is to provide financial products, services and information, including, but not limited to, trading and investments.  The digital platform will deploy advanced technology that is developed from a combination of licensed software and internal proprietary software and customized user interfaces.  The platform will be available on OCs, tablets, mobile devices and all major electronic devices and is expected to be offered to the market in mid-2016.  In addition to the B2C products and services, EF Hutton plans to provide services to institutions.  EF Hutton will market nationwide through a combination of internal and external media."  See EFA Form 10-K, dated 5/4/2016, p. 4.  See also EFA Form 8-K, dated 3/16/2015.

40.     EFC's digital financial platform is intended to "compliment[] Gateway, the internet marketplace we have continued to develop over the last nine months.  Gateway connects consumers with a wide range of financial providers and solutions.  Gateway makes independent providers a viable choice for consumers by eliminating barriers that impede consumers from using independent providers, primarily through marketing to raise awareness of the independent

sector and by standardizing and streamlining the process of selecting and engaging independent financial professionals.  Financial providers who register with Gateway benefit by generating new client relationships." <u>See</u> EFA Form 10-K, dated 5/4/2016, p. 4.  <u>See also</u> EFA Form 8-K, dated 3/16/2015.

41.      At the time of incorporation, Dennis was named President of EFC but he never received the wages and other benefits promised in the Agreement.

42.      In or around November 2014, EFA purchased the EF Hutton licensing and branding rights.  <u>See</u> EFA Form 10-Q, dated 11/23/2015, p. 7.

43.      On December 19, 2014, it was assigned a new symbol "HUTN" to identify itself with the EF Hutton brand.   <u>See</u> EFA Form 8-K, dated 12/22/2014.

44.      On or about March 30, 2015, EFA also changed its name from EFH Group, Inc. to EF Hutton America, Inc., effective April 24, 2015, to clearly identify itself with the EF Hutton brand.  <u>See</u> EFA Form 10-Q, dated 11/23/2015, p. 7.

45.      On or about March 11, 2015, EFC also changed its name from EFH Financial Corp. to EF Hutton Financial Corp. to clearly identify itself with the EF Hutton brand.

46.      On July 31, 2015, EFA issued 200,000 common shares to Dennis solely in connection with his services as a director of EFA, ostensibly valued at $80,000 as of 12/31/2015. <u>See</u> EFA Form 10-Q, dated 11/23/2015, p. 10, 12; EFA Form 10-K, dated 12/31/2015, p. 4.

47.      Subsequently, and again solely in connection with role as director for EFA, Dennis was given an option to purchase 300,000 common shares at $0.50 per share, expiring on March 15, 2019, per the 2016 1st Quarter Board Meeting for EFA on March 22, 2016.

48.      Based on the Agreement, Dennis joined EF Hutton as President, and remained in such capacity for nearly two years until Defendants' wrongful and/or anticipatory breach of the Agreement.

49.     In his capacity as President, Dennis worked tirelessly to assist on an almost daily basis with introductions to EF Hutton and Christopher, strategic decisions, acquisition attempts, investments, sales and marketing work, and conference calls with Christopher, with the Board, and with others involved in the nascent EF Hutton enterprise.

50.     Dennis's decades of experience in business and Wall Street, as well as his status as an alumnus of the old EF Hutton, created credibility and good will for EF Hutton with respect to valuable strategic contacts on Wall Street and to potential business partners, customers and investors.

51.     Indeed, with respect to the recent opening in Springfield, Ohio of EF Hutton's new principal place of business, at Defendants' request, Dennis engaged with local dignitaries and decision makers, including the Ohio's Lt. Governor, Springfield's Mayor, and other legislators at the State and National level and the Chamber of Commerce, and he gave a motivational speech about the culture of excellence and integrity at EF Hutton and the pride of EF Hutton alumni.

52.     Indeed, the September 2, 2016 press release concerning the opening of the new Springfield Ohio headquarters referenced Dennis to the world as the "designated operating company President".

53.     EF Hutton was also able, finally, to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives.

54.     Defendants up to that time still had not provided Dennis any of the wages, bonuses, equity incentives, and other benefits promised in the Agreement, including but not

limited to the reimbursement of his out of pockets, even though he had been named President EF Hutton since October 2014 and had been providing services in relation thereto.

55.     Be that as it may, because EF Hutton was, finally, able to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives, Dennis expected Defendants would shortly be able to honor such promises and that the Agreement which had been negotiated two years ago in accordance with the October 2014 Term Sheet and subsequent revisions agreed to by Dennis and Defendants.

56.     On September 6, 2016, much to Dennis's surprise and dismay, Defendants unilaterally changed the terms of the Agreement when they converted his role as President to a mid-level marketing position.  These unilaterally revised terms were then set forth in a mail dated September 7, 2016 by Christopher to Dennis.

57.     These "new" terms are wholly unacceptable, violate the Agreement and/or constitute an anticipatory breach thereof,  constitute Dennis's wrongful termination and/or Defendants intent to do so, and seek to deprive Dennis of the fruits of two years of labor on behalf of Defendants.

58.     Defendants have, further, removed Dennis as a director of EFA due to his temerity in requesting that Defendants honor their Agreement with him. Such removal resulted in the voiding any unvested stock options with respect to EFA.  Dennis has also not received the vested options that he earned pro rata for 2016 for the first two quarters.

## COUNT I
## BREACH OF CONTRACT
## DENNIS v. EFA and EFC

59.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as if set forth at length herein.

60.     As set more fully set forth above, Dennis entered into an Agreement with EF Hutton wherein the parties agreed that Dennis would be hired as President of EF Hutton, would work remotely and establish a West Coast office for EF Hutton, and receive a 250,000 a year salary, bonuses, equity incentives and other benefits for a two year term that was to commence after EF Hutton closed on financing sufficient to commence business operations.

61.     As set forth more fully above, EF Hutton was also able, finally, to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives.

62.     Further, as Dennis set forth more fully above, Dennis has fully performed under the terms of the Agreement in good faith and was ready, willing, and able to continue to perform the terms of the Agreement in good faith until EF Hutton unilaterally changed the terms of the Agreement with respect to position and location.

63.     EF Hutton's actions in doing so constituted a breach of the Agreement, or, alternatively, an anticipatory breach thereof.

64.     Furthermore, under Pennsylvania law, a covenant of good faith and fair dealing is implied in every contract and Dennis is entitled to receive the fruits of his Agreement with EF Hutton.

65.     EF Hutton's actions in unilaterally changing the terms of the Agreement, constitute a breach of the covenant of good faith and fair dealing, or alternatively, an anticipatory breach thereof.

66.     As a result of EF Hutton's breaches, Dennis has been damaged, and continues to incur damages.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc. and EF Hutton Financial Corp. f/k/a EFH Financial Corp. as follows:

    a.    awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, in excess of $150,000, in an amount to be determined at trial;

    b.    awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

    c.    awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

## COUNT II
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### DENNIS v. EFA and EFC and CHRISTOPHER

67.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as if set forth at length herein.

68.     Pursuant to Pennsylvania's Wage Payment and Collection Law ("WPCL"), every employer is obligated to pay all wages and benefits due to its employees.  43 Pa.C.S. § 260.3(a).

69.     Pursuant to the WPCL, an employer includes but is not limited to "every person, firm or partnership, association, corporation, receiver, … or any of the above mentioned classes employing any person in this Commonwealth."  *Id.* at 260.2a.

70.     Pursuant to 43 Pa.C.S. § 260.2a and *Faden v. deVitry*, 625 A.2d 1236 (Pa. Super.

Ct. 1993), Christopher and any other persons at EF Hutton who participated in refusing to pay Dennis' wages and other benefits are *personally liable* for the wages/benefits due to Dennis plus legal fees and a 25% statutory penalty under the WPCL.

71.     Defendants' failure to honor their contractual obligations to Dennis to pay wages and benefits violated the WPCL.

72.     Pursuant to 43 Pa.C.S. §§ 260.9a-260.10, Dennis is also entitled to attorneys' fees and liquidated damages.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc., EF Hutton Financial Corp. f/k/a EFH Financial Corp. and Christopher Daniels as follows:

    (a)     awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, as well as a 25% statutory penalty under the WPCL, in excess of $150,000, in an amount to be determined at trial;

    (b)     awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

    (c)     awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

### COUNT III
### FRAUD IN THE INDUCEMENT
### DENNIS v. EFA and EFC and CHRISTOPHER

73.     Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

74.     As set forth more fully above, on multiple occasions in or around October 2014, Defendants promised and represented that they would make Dennis President of EF Hutton and to provide him with salary, bonuses, equity incentives and other benefits from EF Hutton once

EF Hutton purchased the EF Hutton closed on financing sufficient to commence business operations.

75.    Those representations were false.

76.    Upon information and belief, EF Hutton knowingly or recklessly made false representations, through Christopher, with no intention of honoring them, in order to induce Dennis to provide his services, and to lend his name and reputation, to their nascent enterprise.

77.    Christopher directly participated in the making of the false representations to Plaintiff and/or authorized the making of such false representations.

78.    The false representations were material to Dennis' decision enter into the Agreement between the parties.

79.    As set forth more fully above, Dennis reasonably relied on the fraudulent representations of Defendants in entering into the Agreement to be President and providing more than two years of services to the Defendants and provides relating to his duties as President; however, he was fraudulently induced into entering into such Agreements and in providing such services.

80.    The actions of Defendants were intentional, willful, outrageous and malicious and justify the imposition of punitive damages.

81.    As a direct and proximate result of Defendants' fraud, Dennis has suffered substantial damages.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc., EF Hutton Financial Corp. f/k/a EFH Financial Corp. and Christopher Daniels as follows:

(a)    awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, as well as punitive damages, in excess of $150,000, in an amount to be determined at trial;

(b)    awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

(c)    awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

## COUNT IV
## SECURITIES EXCHANGE ACT OF 1934
## DENNIS v. EFA and EFC and CHRISTOPHER

82.    The averments of the other paragraphs of this pleading are incorporated by reference herein with the same force and effect as if set forth in full below.

83.    As set forth more fully above, on multiple occasions in or around October 2014, Defendants promised and represented they would make Dennis President of EF Hutton and to provide him with salary, bonuses, equity incentives and other benefits from EF Hutton once EF Hutton purchased the EF Hutton licensing and branding rights and closed on financing sufficient to commence business operations.

84.    Those representations were false. Upon information and belief, Defendants never intended to honor their promises and representations.

85.    Upon information and belief, Defendants made those representations knowingly and/or intentionally.

86.    Those representations constituted "manipulative or deceptive" "device or contrivance" under the Act.

87.    Dennis reasonably relied on these misrepresentations in deciding to purchase stock in the Company and in rendering services as President in the expectation of receiving and/or exercising further stock and/or options pursuant to the Agreement's terms.

88.    Defendants' misrepresentations to Dennis that they in fact intended to make him President in accordance with the Agreement, when they did not, which he reasonably relied upon to purchase stock in the Company and in the expectation of receiving and/or exercising further stock and/or options pursuant to the Agreement's terms, constitutes a violation of the Securities Exchange Act of 1934 ("Act") and other applicable securities laws. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 126 S. Ct. 1503 (2006) (stating that Rule 10b-5, like § 10(b) of the Act itself, broadly prohibits deception, misrepresentation, and fraud in connection with the purchase or sale of any security); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1011–12 (N.D. Cal. 2007) (holding that a stock option is a sale of securities sufficient to fulfill the "in connection with" the sale of securities element) (*citing Falkowski 1012  v. Imation Corp.,* 309 F.3d 1123, 1129–30 (9th Cir. 2002).

89.    Christopher directly participated in the making of the false representations to Plaintiff and/or authorized the making of such false representations and, as CEO, he constitutes a "control person" under the Act.

90.    The actions of Defendants were intentional, willful, outrageous and malicious and justify the imposition of punitive damages.

91.    As a direct and proximate result of Defendants' fraud, Dennis has suffered economic loss.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc., EF Hutton Financial Corp. f/k/a EFH Financial Corp. and Christopher Daniels as follows:

(a) awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, as well as punitive damages, in excess of $150,000, in an amount to be determined at trial;

(b) awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

(c) awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

## COUNT V
## PROMISSORY AND EQUITABLE ESTOPPEL
### DENNIS v. EFA and EFC

92.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.

93.    As set forth more fully above, Dennis rendered his services to EF Hutton in reasonable reliance upon their promises that he would be named President and would receive salary, bonuses, equity incentives and other benefits from EF Hutton in connection thereto.

94.    As set forth more fully above, EF Hutton intentionally made those promises, through Christopher, in order to induce Dennis to provide his services as President, and to lend his name and national reputation, to their nascent enterprise.

95.    Dennis has suffered to his detriment as a result of his reliance on EF Hutton's promises.

96.    There is due and owing from EF Hutton to Dennis the value of the services that Dennis rendered to EF Hutton and provided on their behalf in consideration for EF Hutton's promises to provide salary, bonuses, equity incentives and other benefits.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc. and EF Hutton Financial Corp. f/k/a EFH Financial Corp. as follows:

    (a)    awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, in excess of $150,000, in an amount to be determined at trial;

    (b)    awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

    (c)    awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

**COUNT VI**
**UNJUST ENRICHMENT**
**DENNIS v. EFA and EFC**

97.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein. This Count is brought in the alternative to Count I.

98.    The services that Dennis rendered as President of EF Hutton were for the benefit of EF Hutton which benefited from the services rendered.

99.    At the time Dennis rendered his services as President of EF Hutton, EF Hutton understood that Dennis expected to be compensated for these services.

100.    EF Hutton has refused to compensate Dennis for his services as President of EF Hutton and, therefore EF Hutton has been enriched unjustly.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc. and EF Hutton Financial Corp. f/k/a EFH Financial Corp. as follows:

    (a)    awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, in excess of $150,000, in an amount to be determined at trial;

    (b)    awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

    (c)    awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

## COUNT VII
## QUANTUM MERUIT
## DENNIS v. EFA and EFC

101.    Plaintiff hereby repeats and incorporates all other allegations contained in this pleading as set forth at length herein.  This Count is brought in the alternative to Count I.

102.    Dennis has rendered requested services to EF Hutton in good faith.

103.    These services were accepted by EF Hutton and Defendants promised to compensate Dennis for such services.

104.    At all relevant times, Dennis had an expectation of compensation by EF Hutton for the services rendered, and EF Hutton was aware of Dennis's expectations.

105.    There is due and owing from EF Hutton to Dennis the reasonable value of the services Dennis rendered upon and for EF Hutton.

**WHEREFORE,** Plaintiff Dennis R. White respectfully requests judgment in his favor and against Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc. and EF Hutton Financial Corp. f/k/a EFH Financial Corp. as follows:

(a)    awarding Plaintiff actual damages, including nominal, compensatory, and/or consequential damages, in excess of $150,000, in an amount to be determined at trial;

(b)    awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and

(c)    awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees incurred by Plaintiff in this action.

### JURY TRIAL DEMAND

A jury trial is demanded of all matters triable thereby.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated:  October 12, 2016                    BY: _____
                                                George Bochetto, Esq.