**BOCHETTO AND LENTZ, P.C.**
By:    George Bochetto, PA I.D. No. 27783,
        Albert M. Belmont, III, PA I.D. No. 84817
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
gbochetto@bochettoandlentz.com
abelmont@bochettoandlentz.com
Attorneys for Plaintiff Dennis R. White

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS R. WHITE | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EF HUTTON AMERICA, INC. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven , EF HUTTON FINANCIAL CORP. f/k/a EFH FINANCIAL CORP. and CHRISTOPHER DANIELS, | : | Civil Action No. 2:16-cv-05341-LS |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | ORAL ARGUMENT REQUESTED |
| | : | |

**PLAINTIFF DENNIS R. WHITE'S OPPOSITION TO THE MOTION OF DEFENDANTS EF HUTTON AMERICA, INC. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven, EF HUTTON FINANCIAL CORP. f/k/a EFH FINANCIAL CORP. AND CHRISTOPHER DANIELS TO DISMISS PURSUANT TO FED. R. CIV. P. 2(B)(2), 12(B)(3) AND 12(B)(6) OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...........................................................................1

II.     PROCEDURAL HISTORY................................................................................5

III.    FACTS PERTINENT TO THE MOTION ........................................................5

        A.   THE FACTUAL ALLEGATIONS OF THE COMPLAINT....................................5

        B.   ADDITIONAL FACTS PERTAINING TO JURISDICTION
             AND VENUE IN RESPONSE TO THE CERTIFICATION OF
             CHRISTOPHER DANIELS ..................................................................10

IV.     ARGUMENT....................................................................................................12

        A.   THIS COURT SHOULD DENY THE HUTTON DEFENDANTS'
             MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ..........12

             1.   Only Minimum Contacts Are Required To Establish Personal
                  Jurisdiction .....................................................................................12

             2.   The EF Hutton Defendants' Continuous Business Contacts In
                  Pennsylvania Confers General Jurisdiction .................................13

             3.   The EF Hutton Defendants' Breach of Contract, Fraudulent Acts
                  and Statutory Violations, Targeted At Dennis In Pennsylvania, Constitute
                  Sufficient Minimum Contacts To Establish Specific Jurisdiction ...................17

                  i.   Minimum Contacts Exist In General To Support Specific Jurisdiction ......18

                  ii.  Minimum Contacts Also Exist Under The *IMO Indus.* Test .........................20

                       a.    Plaintiff Alleges Intentional Torts and Violations of
                             Statutory Rights.............................................................21

                       b.    The Brunt Of The Harm Was Suffered By Dennis In
                             Pennsylvania.................................................................21

                       c.    The EF Hutton Defendants Aimed Their Misconduct At
                             Dennis In Pennsylvania Who Has Felt The Brunt Of The
                             Harm In Pennsylvania ..................................................22

                  iii. Traditional Notions Of Fair Play Are Not Offended By
                       This Court's Exercise Of Personal Jurisdiction Over The
                       EF Hutton Defendants..................................................................24

        B.   THIS COURT SHOULD DENY THE EF HUTTON DEFENDANTS'
             MOTION TO DISMISS FOR IMPROPER VENUE ..............................25

        C.   THIS COURT SHOULD DENY THE HUTTON DEFENDANTS'
             MOTION, IN THE ALTERNATIVE, TO TRANSFER...........................26

             1.  Legal Standard Governing § 1404(a) Motion For Transfer ...............26

2. The Factors Governing A Transfer Analysis Under Section 1404(a) Militate In Favor Of Retaining This Forum ................................................................28

    i. Dennis Has Selected This District In Pennsylvania As The Forum ...............28

    ii. The Place Where Many Of Operative Facts Occurred, Pennsylvania, Weighs In Favor Of Retention ............................................................................28

    iii. The Convenience Of Witnesses And Availability Of Compulsory Process Weighs In Favor Of Retention ..............................................................30

    iv. The Convenience Of The Parties Is A Neutral Factor ....................................32

    v. The Location of The Documents Is A Neutral Factor ....................................32

    vi. The Governing Law Weighs In Favor Of Retention ......................................33

    vii. The Relative Means Of The Parties Weighs In Favor Of Retention ..........33

    viii. Public Interests Such As Trial Efficiency And The Interests Of Justice, And The Fact The Matter Is Already Pending In The Eastern District Of Pennsylvania, Weigh In Favor Of Retention ..............34

    ix. In Conclusion, A Balancing Of All Factors Militates In Favor Of Retention .............................................................................................................35

D. Transfer Under § 1631 Is Also Not Warranted .............................................................35

E. THIS COURT SHOULD DENY THE EF HUTTON DEFENDANTS' MOTION TO DISMISS PURSUAN TO 12(b)(6) ................................................................36

1. Standard Governing a 12(b)(6) Motion .......................................................................36

2. In Count I, Dennis Has Stated A Claim for Breach Of Contract Upon Which Relief May Be Granted .............................................................................36

3. In Count II Dennis Has Stated A Claim For Breach Of The Pennsylvania Wage Payment and Collection Law ("WPCL") Upon Which Relief May Be Granted .............................................................................................40

4. In Count III, Dennis Has Stated A Claim For Fraud In The Inducement Upon Which Relief May Be Granted .................................................................42

    i. Dennis has Pled The Elements of Fraud In The Inducement Claim With Particularity, Including Justifiable Reliance And Damages ........................42

    ii. The Gist Of The Action Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim .....................................................................................45

    iii. The Economic Loss Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim ....................................................................................48

    iv. The Corporate Shield Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim Against Christopher .................................................49

     **5.   In Count IV Dennis Has Stated A Claim for Breach Of The Securities Exchange Act of 1934 Upon Which Relief May Be Granted ............................49**

     **6.   In Count V Dennis Has Stated A Claim for Promissory And/Or Equitable Estoppel Upon Which Relief May Be Granted ..................................51**

     **7.   In Counts VI and VII Dennis Has Stated A Claim For Unjust Enrichment And/Or Quantum Meruit Upon Which Relief May Be Granted ................................................................................................53**

**V.     CONCLUSION ................................................................................................56**

Plaintiff, Dennis R. White (**"Dennis"** or **"Plaintiff"**), by and through undersigned counsel, Bochetto & Lentz, P.C., hereby submits this Memorandum of Law in Opposition to the Motion to Dismiss or, in the alternative, to Transfer Venue (**"Motion"**) of Defendants EF Hutton America, Inc. f/k/a EFH Group, Inc. f/k/a Twentyfour/seven Ventures, Inc. (**"EFA"**), EF Hutton Financial Corp. f/k/a EFH Financial Corp. (**"EFC"**) (EFA and EFC may be referred to herein as **"EF Hutton"**) and Christopher Daniels (**"Christopher"**) (collectively, EF Hutton and Christopher may be referred to as the "**EF Hutton Defendants**" or **"Defendants"**).

*Per the Policies and Procedures of Judge J. William Ditter, Jr., Dennis respectfully requests oral argument with respect to the pending Motion and his Opposition thereto.*

## I. PRELIMINARY STATEMENT

Dennis has had more than thirty-five years of experience in the financial services industry. He graduated from Gannon University in Erie, Pennsylvania in 1965 and obtain a Post-Graduate Certificate in Investment Management from the Wharton School at the University of Pennsylvania in Philadelphia, Pennsylvania in 1994. From 1979 to 1996, he held various executive positions related to investment consulting and marketing with the EF Hutton Consulting Group (that later became known as Shearson Lehman Hutton, then Citigroup then Smith Barney) in the investment consulting division which managed or advised on $200 billion of client assets. From 1999 to 2005, he served as a Managing Director of Atlanta Sosnoff, an investment company managing $6 billion in assets. Since 2006 to 2014, he was an executive with DRW & Associates, an entity engaged in strategic consulting.

The EF Hutton Defendants desired to establish a "digital" workplace and financial services company by using a well-known brand, "EF Hutton", that had been associated with the former Wall Street firm founded by Edward F. Hutton in 1904 with the well-known-tag line "When EF Hutton talks, people listen."

In order to bring on board a proven "Wall-Streeter" and to give credibility to the enterprise, in

2014, the EF Hutton Defendants induced Dennis to associate with them and to bring with him his decades of Wall Street experience, by entering into an employment agreement pursuant to which he would be the President of EF Hutton and would receive certain benefits in connection thereto, as set forth more fully below.

The EF Hutton Defendants knowingly and intentionally entered this employment relationship with Dennis, a long-time Pennsylvania resident, whereby Dennis would perform his duties and provide his services while located in Pennsylvania through a modern "digital" workplace where he, and the rest of the company, could work remotely from their homes as part of their employment. In Dennis's case he did so from his home office in Pennsylvania in this District on an almost daily basis for nearly two years.

In reliance upon that employment agreement, Dennis helped bring the EF Hutton Defendants' desires to fruition. Defendants, however, failed to honor their agreement with Dennis. Consequently, Dennis has been forced file the instant claims. A copy of the Amended Complaint (**"Am. Compl."**) is attached hereto as **Exhibit "1"**.

In response, the EF Hutton Defendants have moved to dismiss for lack of jurisdiction, or alternatively, to transfer venue, or for failure to state a claim upon which relief may be granted.

Due to the "digital" nature of the workplace for EF Hutton and its business model, virtually all of the parties' contacts have been in either Pennsylvania or New York City for nearly two years. Despite the fact that virtually all of the parties' contacts have been in either Pennsylvania (where Dennis resided and from where he primarily worked) or New York City, the EF Hutton Defendants argue this Court lacks personal jurisdiction over them, or in the alternative, Ohio is a more convenient forum. Nevertheless, simply because the EF Hutton Defendants relocated to Ohio during the last five weeks of the employment relationship between the parties, the EF Hutton Defendants argue that this Court lacks personal jurisdiction over them and/or that Ohio is a more convenient venue. The EF

Hutton Defendants' arguments in this regard are based on the irrelevant fact that they relocated to Ohio towards the end of the employment relationship between the parties.

The EF Hutton Defendants' jurisdiction and venue arguments are without merit because they fail to consider the continuous and systematic Pennsylvania contacts EF Hutton Defendants have had with Dennis, and others, in Pennsylvania both through its activities with and through Dennis, its Pennsylvania based employee, and through its efforts to solicit customers and to sell products in Pennsylvania through its digital web-based, interactive, business platform. Dennis worked remotely, as did the majority of EF Hutton's directors, officers and/or employees. Consequently, the majority of the services performed by Dennis for EF Hutton were in Pennsylvania. Additionally, the majority of contacts between the EF Hutton Defendants and Dennis were by e-mail and telephone calls to and from Pennsylvania. What in person meetings occurred, generally occurred in New York City, Princeton, NJ or Orlando, Florida. There were three meetings with Dennis, an EF Hutton Director and Wall Street contacts Dennis was seeking, as part of his duties as President, to introduce to EF Hutton in Philadelphia. EF Hutton further, as a "digital" workplace and financial services company marketed its services and products on a nationwide basis via an interactive web platform that invites customers to "Talk with an Advisor" and to "Open an Account Now".

There were hardly any contacts with Ohio. Indeed, Dennis was only in Ohio for two days at the very end of the employment relationship, on September 1, and 2, 2016. The majority of the individual witnesses and individual parties, other than Christopher, also reside outside of Ohio.

Consequently, for these reasons, and the reasons set forth more fully below, ample minimum contacts exist to properly sustain both "general" and "specific" jurisdiction in Pennsylvania and Pennsylvania is the most appropriate and convenient forum for the matters in dispute.

Defendants' Motion to dismiss on personal jurisdictional grounds, and its motion to transfer venue to Ohio, should be denied. Pennsylvania is Dennis' choice of venue because it is his home state,

where he rendered the employment services at issue. Venue and jurisdiction is completely appropriate in Pennsylvania and should not be disturbed.

Defendants' Motion to Dismiss the Amended Complaint for the failure to state a claim is also without merit. Dennis' claims are well pled based on specific facts and are grounded in well-settled law. In his Amended Complaint, Dennis has asserted claims for Breach of Contract (Count I), violations of the Pennsylvania Wage Payment and Collection Law **("WCPL")** (Count II), Fraud in the Inducement (Count III), the violation of Securities Exchange Act of 1934 **("1934 Act")** (Count IV), Promissory and Equitable Estoppel (Count V), Unjust Enrichment (Count VI) and Quantum Meruit (Count VII). See Am. Compl.

Contrary to the EF Hutton Defendants' assertions, Dennis has stated claims upon which relief can be granted with respect to each of these claims because:

(i) Dennis has specifically alleged the terms of an oral agreement **("Employment Contract")** between EF Hutton and himself in that he would be the President of EF Hutton and would receive certain salaries and benefits in connection thereto, as set forth more fully below, and that EF Hutton has breached the Employment Contract;

(ii) Dennis' rights are actionable under the WCPL in that he had an Employment Contract with EF Hutton and the EF Hutton Defendants' failure to honor their obligations to Dennis to pay wages and benefits pursuant to the Employment Contract violated the WPCL;

(iii) To the extent that the EF Hutton Defendants contend that no Employment Contract exists or was ever agreed to, Dennis has been fraudulently induced into providing two years' worth of services to the EF Hutton Defendants, and to lend his name and reputation, to their nascent enterprise, Dennis seeks different damages in tort than from his breach of contract claim, and Dennis may assert this claim, in the alternative;

(iv) the EF Hutton Defendants made misrepresentations to Dennis in violation of the 1934 Act

that Dennis reasonably relied in deciding to purchase stock in EF Hutton; and

(v) in the alternative to his Employment Contract claim, Dennis may assert claims of promissory estoppel, unjust enrichment and quantum meruit based upon the promises made by EF Hutton and the benefits thereby conferred on EF Hutton by Dennis in reliance thereto.

Consequently, for these reasons, and the reasons set forth more fully below, the EF Hutton Defendants Motion to Dismiss for failure to state a claim should be denied.

## II. PROCEDURAL HISTORY

On or about October 12, 2016, Dennis initiated this lawsuit by way of Complaint. Thereafter, on October 26, 2016, Dennis filed an Amended Complaint as of right. The EF Hutton Defendants executed the Waiver of Service forms provided for in the Federal Rules and accepted service on October 27, 2016.

Thereafter, with leave of Court, the EF Hutton Defendants' response was due February 10, 2017. On February 10, 2017, the EF Hutton Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2), 12(B)(3) and 12(B)(6), or in the alternative, to Transfer Venue. Pursuant to the Federal and Local Rules Dennis's response was due February 27, 2017 (14 days plus 3 days due to electronic service).

## III. FACTS PERTINENT TO THE MOTION

### A. THE FACTUAL ALLEGATIONS OF THE COMPLAINT

Dennis hereby incorporates the detailed factual pleadings of his Amended Complaint and the attachments thereto into this memorandum of law, and sets forth the following brief statement of facts for the benefit of the Court.

Defendants desired to establish a financial services company by using a well-known brand, "EF Hutton", that had been associated with the former Wall Street firm founded by Edward F. Hutton in 1904 with the well-known-tag line "When EF Hutton talks, people listen." See Am. Compl. ¶ 15.

Dennis has had more than thirty-five years of experience in the financial services industry and, among other positions, from 1979 to 1996, he held various executive positions related to investment consulting and marketing with the EF Hutton Consulting Group (that later became known as Shearson Lehman Hutton, then Citigroup then Smith Barney) in the investment consulting division which managed or advised on $200 billion of client assets.  See Am. Compl. ¶ 14.

In order to give credibility to the enterprise, in the fall of 2014, Defendants induced Dennis - Pennsylvania resident - to associate with them and to bring with him his decades of Wall Street experience, by entering into an agreement ("Employment Agreement") that he would be the President of EF Hutton and would receive certain salaries and benefits in connection thereto.  See Am. Compl. ¶ 1, 16, 19.   EF Hutton Defendants knowingly and intentionally entered this employment relationship with Dennis, a Pennsylvania resident, whereby Dennis would perform his duties and provide his services in a modern "digital" workplace where he, and the rest of the company, could work remotely from their homes as part of their employment.  In Dennis's case he did so from his home office in Pennsylvania on an almost daily basis for nearly two years.  See Am. Compl. ¶ 1, 33, 42-43, 51.

The essential terms of oral Employment Agreement were negotiated from August to October 2014 by Dennis and the EF Hutton Defendants and were originally set forth in an October 2014 Term Sheet exchanged by Dennis and the Defendants that later formed the basis of an agreement between EF Hutton and Dennis when they entered into the Employment Agreement in October 2014.  See Am. Compl. ¶ 20, 30.

With respect to the oral Employment Agreement, Dennis understood the EF Hutton Defendants agreed that he would be hired as President of EF Hutton[1] and receive salary, bonuses, equity incentives and other benefits in accordance with the Term Sheet for a two year term, with the

---

[1]     EFA and Christopher did not differentiate between EFA and the wholly owned subsidiary later formed, EFC.  It was understood that Christopher was to be the CEO of the enterprise known as EF Hutton and Dennis was to be the President of EF Hutton. Such was also reflected on internal organizational charts for EF Hutton.  See Am. Compl. ¶ 22.

exception of two terms therein.  See Am. Compl. ¶ 30.  To be clear, Dennis is not contending that the

Term Sheet itself is the contract, but rather he contends that EF Hutton Parties and he subsequently

agreed upon the oral Employment Agreement using the Term Sheet as the basis for the majority of the

terms thereof, except with respect to salary and location.

With respect to those two terms that were different from the Term Sheet, Dennis and the EF

Hutton Defendants agreed, at the outset, that Dennis would be paid a salary to be determined and that

location was negotiable because Dennis would primarily work remotely.  See Am. Compl. ¶ 31.  Those

terms were thereafter determined and agreed as contemplated.  First, based on subsequent discussions,

Dennis and the EF Hutton Defendants agreed that Dennis would be paid $250,000 a year plus other

expenses (including an office) to address the tax consequences and his personal costs of going to Los

Angeles to establish the West Coast office for EF Hutton providing EF Hutton a national presence from

coast to coast.  See Am. Compl. ¶ 32.  Second, the parties agreed that because EFA was to be a

"digital" firm and because Dennis was willing to regularly travel to the primary offices if need be,

while Dennis may be located in Los Angeles, he could also telecommute and/or maintain a virtual

presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida,

Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location

from time to time.  See Am. Compl. ¶ 33, 60.

With respect to the Employment Agreement, the Parties agreed, among other things, that, as

President, Dennis was to report to the CEO, Christopher, that Dennis's was to plan strategic direction;

market the firm to financial advisors and trade, assist the CEO in communicating the firm's message

internally and externally, establish compensation, and policies and procedures, and that Dennis was to

start after EF Hutton closed on financing sufficient to commence business operations.  See Am. Compl.

¶ 30.

At the outset of the parties' negotiation of the Employment Agreement, and consistent with the

terms of the Employment Agreement thereafter agreed upon, Dennis was made director of EFA on or about August 29, 2014. See Am. Compl. ¶ 34.

After the parties entered into the Employment Agreement in October 2014, EFC was incorporated on or about October 27, 2014 and at the time of incorporation, Dennis was named President of EFC. See Am. Compl. ¶ 20, 30-33, 37, 41.

In reasonable reliance upon the Employment Agreement to make him President and the EF Hutton Defendants' promises, and to show his commitment to EF Hutton, in or around December 2014, Dennis also personally purchased 100 shares of stock in EFA. See Am. Compl. ¶ 35.

Based on the Employment Agreement, Dennis joined EF Hutton as President to bring the EF Hutton Defendants' desires to fruition, and remained in such capacity for nearly two years until Defendants' wrongful and/or anticipatory breach of the Agreement. See Am. Compl. ¶ 16, 50. In contrast to the high level supervisory-only governance type duties associated with Dennis' Directorship role,[2] in his capacity as President, Dennis worked tirelessly to assist on an almost daily basis with introductions to EF Hutton and Christopher, strategic decisions, acquisition attempts, investments, sales and marketing work, and conference calls with Christopher, with the Board, and with others involved in the nascent EF Hutton enterprise. See Am. Compl. ¶ 51. Dennis's decades of experience in business and Wall Street, as well as his status as an alumnus of the old EF Hutton, created credibility and good will for EF Hutton with respect to valuable strategic contacts on Wall Street and to potential business partners, customers and investors. See Am. Compl. ¶ 52.

The majority of the EF Hutton Defendants' dealings with Dennis in his capacity as President of EFC have been conducted through telephone conferences and correspondences (whether e-mails or otherwise) directed to and from or conducted by Dennis from his residence in the Commonwealth of

---

[2] Dennis does not deny that he did receive some compensation as Director in the form of stock, but this compensation and associated duties, were separate and apart from his duties as President. See Am. Compl. ¶ 48, 49, 51.

Pennsylvania.  See Am. Compl. ¶ 42.  The EF Hutton Defendants understood that many of Dennis's initial two years' worth of efforts would be conducted in Pennsylvania and, as such, the EF Hutton Defendants regularly conducted business in this jurisdiction.  See Am. Compl. ¶ 43.

Dennis only came to Ohio in connection with the opening of EF Hutton's offices on or about September 2, 2016.  At the EF Hutton Defendants' request, Dennis engaged with local dignitaries and decision makers, including the Ohio's Lt. Governor, Springfield's Mayor, and other legislators at the State and National level and the Chamber of Commerce, and he gave a motivational speech about the culture of excellence and integrity at EF Hutton and the pride of EF Hutton alumni.  See Am. Compl. ¶ 53.  Indeed, the September 2, 2016 press release concerning the opening of the new Springfield Ohio headquarters referenced Dennis to the world as the "designated operating company President".  See Am. Compl. ¶ 54.

With this opening, EF Hutton was also able, finally, to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives.  See Am. Compl. ¶ 55.  The EF Hutton Defendants up to that time still had not provided Dennis any of the wages, bonuses, equity incentives, and other benefits promised in the Employment Agreement, including but not limited to the reimbursement of his out of pockets, even though he had been named President EF Hutton since October 2014 and had been providing services in relation thereto.  See Am. Compl. ¶ 56.  Be that as it may, because EF Hutton was, finally, able to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives, Dennis expected the EF Hutton Defendants would shortly be able to honor such promises and that the Agreement which had been negotiated two years ago in accordance with the October 2014 Term Sheet and subsequent revisions agreed to by Dennis and the EF Hutton Defendants.  See Am. Compl. ¶ 57.

However, on September 6, 2016, much to Dennis's surprise and dismay, the EF Hutton

Defendants unilaterally changed the terms of the Agreement when they converted his role as President to a mid-level marketing position. These unilaterally revised terms were then set forth in a mail dated September 7, 2016 by Christopher to Dennis. See Am. Compl. ¶ 58. These "new" terms are wholly unacceptable, violate the Employment Agreement and/or constitute an anticipatory breach thereof, constitute Dennis's wrongful termination and/or the EF Hutton Defendants' intent to do so, and seek to deprive Dennis of the fruits of two years of labor on behalf of EF Hutton Defendants. See Am. Compl. ¶ 16, 59. Reinforcing this breach, the EF Hutton Defendants have further, removed Dennis as a director of EFA due to his temerity in requesting that Defendants honor their Employment Agreement with him. See Am. Compl. ¶ 61.

**B.    ADDITIONAL FACTS PERTAINING TO JURISDICTION AND VENUE IN RESPONSE TO THE CERTIFICATION OF CHRISTOPHER DANIELS**

"Once a jurisdictional defense has been properly raised, the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984) (quoting Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)). The plaintiff must "sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." Id. at 66 n. 9. However, any factual dispute must be construed in favor of the plaintiff. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003).

Here, Dennis has submitted a certification as to facts which support jurisdiction. See Certification of Dennis R. White **("White Cert.")**, a copy of which is attached hereto as Exhibit "2".

- Dennis is a Pennsylvania resident in this District. See White Cert. ¶ 2.

- While EF Hutton may now be in Ohio, EF Hutton did not move to Ohio until August 2016, at the earliest. By the time Dennis started to have dealings with EF Hutton in August 2014 and thereafter, EF Hutton's principal place of business was an office located at 77 Water Street, 7th Floor, New York, NY 10005 until the end of July 2016. Meetings and introductions were held there and at other locations in New York City. See White Cert. ¶ 3.

- While Christopher may now be a resident of Ohio, he did not move to Ohio until at least July 2016. Prior to that, Christopher was a resident of New York, NY. See White Cert. ¶ 4.

- There was no policy that executives work at EF Hutton's corporate headquarters. To the contrary, as a modern 21st Century digital workplace, it was understood that executives, such as Dennis, could work remotely. Indeed, with respect to Dennis, the EF Hutton Defendants agreed that Dennis was to be permitted to telecommute and/or maintain a virtual presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida, Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location from time to time. When the matter of a policy concerning executives working and being located at EF Hutton's corporate headquarters came up, it was something Christopher wanted to do, but he had not been going to make others do until on September 1, 2015 (the night before the grand opening of the EF Hutton Tower on September 2, 2015) Christopher stated that the Chief Financial Officer was going to be requested to work out of Springfield, Ohio. See White Cert. ¶ 5.

- EF Hutton is registered as an investment advisor through its owned affiliate, EF Hutton Investments, LLC, with the SEC and has become "notice filed or registered" with respect to the Commonwealth of Pennsylvania on or about August 25, 2016. The Form ADV lists as its website EF Hutton's website: HTTP://WWW.EFHUTTON.COM/INVESTMENTS, lists Pennsylvania as state as to which it wishes to receive notice of its SEC registration filing and other filings with the SEC, lists EFC as the direct owner of EF Hutton Investments, LLC, and lists EFA as the direct owner of EFC. Copies of (i) the SEC's Investment Advisor Firm Summary re: EF Hutton Investments, LLC is attached to the White Cert. as Exhibit "A", (ii) the Form ADV filed on 10/16/2016 in connection with the registration is attached to the White Cert. as Exhibit "B". See White Cert. ¶ 6.

- With respect to Dennis' work for the EF Hutton Defendants, Dennis generally worked remotely via e-mail and telephone with EF Hutton in his capacities as President and Director from Dennis's home office in Wayne, Pennsylvania. The majority of the EF Hutton Defendants' dealings with Dennis were conducted through telephone conferences and correspondences (whether e-mails or otherwise) directed to and from or conducted by Dennis from Dennis's residence in Pennsylvania. The EF Hutton Defendants understood that many of Dennis's initial two years' worth of efforts would be conducted in Pennsylvania and, as such, Defendants regularly conducted business in this jurisdiction. In that regard, besides telephonic conferences, Dennis met in person with certain potential investment or transaction partners and EF Hutton board members from time to time in Pennsylvania. For example, but not by way of limitation, Dennis recalls (i) having two meetings on May 5, 2015 and May 6, 2015 with EF Hutton Board Member Craig Marshak and Marc Paley, the CEO of Hybrid Financial at the Rittenhouse Hotel in Philadelphia and (ii) having a meeting on March 16, 2016 with Bruce Ventigmilia at the Rittenhouse Hotel in Philadelphia with respect to the ramping of EF Hutton's website and related business model. See White Cert. ¶ 7.

- EH Hutton has directed their activities to this forum, as well as nationwide, by virtue of their activities in marketing an internet-based, nationwide, digital marketplace aimed at that connecting consumers with a network of financial providers across a range of financial products and services. See EFA Form 8-K, dated 3/16/2015, Exh. 99.1 (stating "EF Hutton

Financial, Corp. a subsidiary of EFH Group Inc. (OTC: HUTN) today launched a national internet initiative at www.efhutton.com") and EFA Form 10-K, dated 5/4/2016, at p. 8 (stating "The registrant, through its subsidiary, uses a range of marketing strategies and techniques, including but not limited to: direct marketing via phone and mail, internet marketing, social media such as Twitter, Facebook and Linkedin, public relations, traditional media advertising" and EFA Form 10-K, dated 5/4/2016, at p. 4 (stating "EF Hutton will market nationwide through a combination of internal and external media"), copies of which attached to the Am. Compl.as **Exhibits "A" and "B"**, respectively. See White Cert. ¶ 8.

- While EF Hutton asserts that it has not, in fact, contracted yet with any customers or provided products in Pennsylvania, upon information and belief, that was the case nationwide because EF Hutton had not yet contracted with any customers or provided products yet anywhere during the time relevant to Dennis's claims, including Ohio and New York. See White Cert. ¶ 9.

- While Dennis has been to Ohio, he was only in Ohio once in connection with the opening of the EF Hutton Tower in or around September 1-2, 2016. Prior to that, the parties met in New York City, New York and Princeton, New Jersey, Orlando, Florida, and other locations. Other than the aforesaid occasional in person meetings, the EF Hutton Defendants agreements, promises, representations and dealings with Dennis have generally been negotiated, entered into and conducted through telephone calls and correspondences (whether e-mails or otherwise) directed to and from Dennis in Pennsylvania. See White Cert. ¶ 10.

- Other than Christopher, the current and Former Board members and/or employees of EF Hutton and Wall Street professionals introduced to EF Hutton by Dennis that the parties may call as witnesses do not reside in Ohio. Rather, they are located elsewhere in Pennsylvania, New York, Connecticut, Michigan, Wyoming, Nevada and elsewhere. See White Cert. ¶ 11.

## IV. ARGUMENT

### A. THIS COURT SHOULD DENY THE HUTTON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

#### 1. Only Minimum Contacts Are Required To Establish Personal Jurisdiction

A two-part test determines whether a federal court may exercise personal jurisdiction over a defendant. First, the Court applies the relevant state long-arm statute to see if it permits exercise of personal jurisdiction. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Second, the Court determines whether the exercise of personal jurisdiction would comport with a defendant's federal due process rights. Id. at 259.

Pennsylvania's long-arm statute permits the exercise of personal jurisdiction to the fullest extent

allowed by the United States Constitution and its guarantee of due process. 42 P.S. §§ 5322(b); Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1221 (3d Cir.1992); Time Share, 735 F.2d at 63.

Moreover, with regard to torts, Pennsylvania has clearly legislated its desire to provide a forum for redress for its residents harmed by a tort committed outside the state:

> A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly or by an agent, as to a cause of action or other matter arising from such person: . . . (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 P.S. § 5322(a)(4).

The United States Constitution permits a federal court to assert its personal jurisdiction to the extent the defendant has "minimum contacts" with the forum state. Toys "R" Us., 318 F.3d at 451. Accordingly, this Court has jurisdiction over the EF Hutton Defendants to the extent they had minimum contacts with Pennsylvania.

## 2. The EF Hutton Defendants' Continuous Business Contacts In Pennsylvania Confers General Jurisdiction

General jurisdiction exists where a nonresident's contacts with the forum are "continuous and substantial," and permits the court to exercise jurisdiction "regardless of whether the subject matter of the cause of action has any connection to the forum." Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998).

In the corporate context, courts have historically applied general jurisdiction to organizations that hire employees, apply for business licenses, advertise, and regularly solicit sales within the relevant forum, among other activities. See In re Chocolate Confectionary Antitrust Litig., 641 F. Supp. 2d 367, 383 (M.D. Pa. 2009) (citations omitted).

Further, where, as here, a company conducts business over the internet, that conduct can sustain jurisdiction where a central part of its business. If a defendant web site operator intentionally targets

the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied." See Toys "R" Us, 318 F.3d at 452. As discussed in the leading case on this issue:

> the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. E.g. CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. E.g. Bensusan Restaurant Corp., v. King, 937 F. Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. E.g. Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328 (E.D.Mo.1996).

Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). A court may also consider related non-internet activities such as business trips to the forum state, telephone and fax communications directed to the forum state, and advertisements in the forum state as part of the purposeful availment analysis. See Toys "R" Us, 318 F.3d at 453-54.

The EF Hutton Defendants have engaged in a continuous and systematic course of business with Dennis, and others, in Pennsylvania. The EF Hutton Defendants knowingly and intentionally entered this employment relationship with Dennis, a Pennsylvania resident, whereby Dennis would perform his duties and provide his services in a modern "digital" workplace where he, and the rest of the company, could work remotely from their homes as part of their employment. In Dennis's case he did so from his home office in Pennsylvania on an almost daily basis for nearly two years. The EF

Hutton Defendants have further engaged in substantial and continuous contacts with Pennsylvania through its activities with and through Dennis, its Pennsylvania based employee, and through its efforts to solicit customers and to sell products in Pennsylvania and nationwide through its digital web-based, interactive, business platform and the SEC licensing of an affiliate to provide related brokerage services in Pennsylvania and nationwide.

From August 2014 until the EF Hutton Defendants breached their Employment Agreement with Dennis in September 2016, the EF Hutton Defendants carried an ongoing business relationship with Dennis in Pennsylvania through telephone calls and emails to and from Pennsylvania. <u>See</u> White Cert. ¶ 3, 5, 7. Dennis, on behalf of EF Hutton, generally worked remotely via e-mail and telephone in his capacities as President and Director from his home office in Wayne, Pennsylvania resulting in an almost daily EF Hutton presence in this jurisdiction. <u>See</u> White Cert. ¶ 5, 7. At least two meetings where held at the Rittenhouse Hotel in Philadelphia with another director of EF Hutton, Dennis and a potential business contact. <u>See</u> White Cert. ¶ 7.[3]

EF Hutton directed its efforts to solicit customers and to sell products in Pennsylvania and nationwide through its digital web-based, interactive, business platform. <u>See</u> White Cert. ¶ 8-9. Further, through an owned affiliate EF Hutton Investments, LLC, EF Hutton obtained brokerage licensing in Pennsylvania through which services would be offered through the website. <u>See</u> White Cert. ¶ 6. The website is interactive, and invites customers to "Talk with an Advisor" and "Open an Account Now". <u>See</u> Website front page, attached to the White Cert. as Exhibit "C". This website and internet platform is central to EF Hutton's business model. As stated in EF Hutton's own SEC filings:

- EF Hutton is a "digital B2C financial platform that is to provide financial products, services and information, including, but not limited to, trading and investments. The digital platform will deploy advanced technology that is developed from a combination of licensed software and internal proprietary software and customized user interfaces. The platform will be available on OCs, tablets, mobile devices and all major electronic

---

[3] In contrast, Dennis was only in Ohio for two days. <u>See</u> White Cert. ¶ 10.

devices and is expected to be offered to the market in mid-2016. In addition to the B2C products and services, EF Hutton plans to provide services to institutions. EF Hutton will market nationwide through a combination of internal and external media." <u>See</u> Form 10-K, dated 5/4/2016, p. 4 (Am. Compl. Exh. B). <u>See also</u> Form 8-K, dated 3/16/2015 (Am. Compl. Exh. A).

- EF Hutton's digital financial platform is intended to "compliment[] Gateway, the internet marketplace we have continued to develop over the last nine months. Gateway connects consumers with a wide range of financial providers and solutions. Gateway makes independent providers a viable choice for consumers by eliminating barriers that impede consumers from using independent providers, primarily through marketing to raise awareness of the independent sector and by standardizing and streamlining the process of selecting and engaging independent financial professionals. Financial providers who register with Gateway benefit by generating new client relationships." <u>See</u> EFA Form 10-K, dated 5/4/2016, p. 4 (Am. Compl. Exh. B). <u>See also</u> EFA Form 8-K, dated 3/16/2015 (Am. Compl. Exh. A).

- To that end, the EF Hutton Defendants have directed their activities to this forum, as well as nationwide, by virtue of their activities in marketing an internet-based, nationwide, digital marketplace – central to its business - aimed at that connecting consumers with a network of financial providers across a range of financial products and services. <u>See</u> EFA Form 8-K, dated 3/16/2015, Exh. 99.1 (Am. Compl. Exh. A) (stating "EF Hutton Financial, Corp. a subsidiary of EFH Group Inc. (OTC: HUTN) today launched a national internet initiative at <u>www.efhutton.com</u>") and EFA Form 10-K, dated 5/4/2016, at p. 8 (Am. Compl. Exh. B) (stating "The registrant, through its subsidiary, uses a range of marketing strategies and techniques, including but not limited to: direct marketing via phone and mail, internet marketing, social media such as Twitter, Facebook and Linkedin, public relations, traditional media advertising.").

These facts demonstrate that EF Hutton has engaged systematic and continuous contacts through: (i) in employing a Pennsylvania resident who performed his services and activities as a Director and President on behalf of EF Hutton remotely through multiple telephone calls and e-mails to and from Pennsylvania and who held meetings in Pennsylvania; and (ii) targeting Pennsylvania residents through an interactive website, that comprised and was essential to its business platform ,through which it offered financial advice or solicited the creation of financial accounts, together with the use of an affiliate registered as a financial broker with the SEC in Pennsylvania. These contacts,

taken together, are sufficient to support a finding of general jurisdiction.   See Blumenthal v. Drudge,

992 F. Supp. 44, 54–56 (D.D.C.1998) (exercise of personal jurisdiction found proper where defendant

maintained an interactive web site, traveled to the forum, and contacted residents of foreign jurisdiction

via email, telephone, and mail); Maritz, Inc. v. Cybergold, Inc., 947 F. Supp. 1328, 1333 (E.D. Mo.

1996) (held that creating an online commercial mailing list by signing people up at their Web site that

was an essential part of its commercial purposes was purposeful availment).   These systematic and

continuous contacts are in contrast to a company that has no employees in a jurisdiction, has conducted

no meetings in a jurisdiction, and whose website is purely informational and not a central part of its

business model for interacting with consumers in a jurisdiction.   Compare Santana Prod., Inc. v.

Bobrick Washroom Equip., 14 F.Supp.2d 710, 714 (M.D.Pa.1998) (inclusion of defendant "on a

passive web page, i.e., a web page that merely provides information but through which no business is

transacted, will not provide a sufficient basis upon which to base general jurisdiction").

    The case cited by the EF Hutton Defendants, Jacobs v. Halper, 116 F. Supp. 3d 469, 477 (E.D.

Pa. 2015)is distinguishable because the plaintiff there had no other contacts to support jurisdiction in

addition to the website and no evidence to support that the defendant  in question was intentionally

targeting consumers through its website.

    Because the factual record, with any factual disputes being construed in favor of Dennis,

supports a finding of general jurisdiction, the EF Hutton Defendants' Motion should be denied.   To the

extent that the Court may require additional evidence, which is not in Dennis's possession given his

status as a former employee, Dennis respectfully requests the court to permit jurisdictional discovery.

### 3.    The EF Hutton Defendants' Breach of Contract, Fraudulent Acts and Statutory Violations, Targeted At Dennis In Pennsylvania, Constitute Sufficient Minimum Contacts To Establish Specific Jurisdiction

    Specific jurisdiction exists where the plaintiff's claim "is related to or arises out of the

defendant's contacts with the forum." Pennzoil, 149 F.3d at 201 (citations omitted).   The analysis of

specific jurisdiction involves two inquiries, the first mandatory and the second discretionary: (1) whether the defendant had minimum contacts with the forum such that it would have "reasonably anticipate[d] being haled into court there"; and (2) whether "the assertion of personal jurisdiction would comport with fair play and substantial justice." Id. (citations omitted).

### i. Minimum Contacts Exist In General To Support Specific Jurisdiction

"A finding of minimum contacts demands the demonstration of some act by which the defendant purposely avail[ed] itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws." Pennzoil Prods., 149 F.3d at 203 (citations omitted). In addition, the court takes into account "the relationship among the forum, the defendant and the litigation." Mellon Bank, 960 F.2d at 122 (citation omitted). Breach of contract claims can form the basis of a court's assertion of personal jurisdiction over the contracting parties. See General Electric Co. v. Deutz AG, 270 F.3d 144, 150 (3d. Cir. 2001) ("Parties who reach out beyond their state and create continuing relationships and obligations with citizens of another state are subject to the regulations of their activity in that undertaking"). A single contact, including mail and telephone contacts, may be sufficient to subject a party to personal jurisdiction, if the contact gives rise to the litigation. Waimberg v. Medical Transportation of America, 52 F. Supp. 2d 511, 515 (E.D. Pa. 1999).

As alleged in the Am. Complaint and set forth in the White Certification, Dennis' contacts with EF Hutton in Pennsylvania have given rise to the litigation.

The EF Hutton Defendants knowingly and intentionally entered this employment relationship with Dennis, a Pennsylvania resident, whereby Dennis would perform his duties and provide his services in a modern "digital" workplace where he, and the rest of the company, could work remotely from their homes as part of their employment. In Dennis's case he did so from his home office in Pennsylvania in accordance with EF Hutton's business model on an almost daily basis with the express

knowledge and assent of the EF Hutton Defendants. In this regard, <u>Randall v. Davin</u>, No. 13-703, 2013 U.S. Dist. LEXIS 168223, (W.D. Pa. Nov. 26, 2013), a non-precedential decisions cited by the EF Hutton Defendants, are distinguishable factually because EF Hutton was specifically designed and pitched as a digital work place involving remote, regular, telecommuting as a routine part of its Dennis's employment for almost two years and where Dennis also met with people in connection with EF Hutton business in Philadelphia. ). <u>Bolus v. Fleetwood Motor Homes of IN, Inc.</u>, No. 3:11-2027, 2012 U.S. Dist. LEXIS 116436, (M.D. Pa. Aug. 17, 2012) and <u>Rychel v. Yates</u>, No. 09-1514, 2011 U.S. Dist. LEXIS 38824, (W.D. Pa. Apr. 11, 2011), also cited by the EF Hutton Defendants, are also distinguishable by virtue of the continuity and nature of EF Hutton's systematic with their employee Dennis and the conduct of EF Hutton's business with and through Dennis contacts in Pennsylvania and this District.

Hardly occasional, the majority of the EF Hutton Defendants' dealings with Dennis , including negotiating and entering into the Employment Agreement and being the beneficiary of Dennis's services and work, through telephone conferences and correspondences (whether e-mails or otherwise) directed to and from or conducted by Dennis from his residence in the Commonwealth of Pennsylvania. The EF Hutton Defendants understood that many of Dennis's initial two years' worth of efforts would be conducted in Pennsylvania and, as such, the EF Hutton Defendants regularly conducted business in this jurisdiction. <u>See</u> Am. Compl. ¶ 42-43; White Cert. ¶ 5, 7. In that regard, besides telephonic conferences, in the performance of his duties and conferring of benefits upon the EF Hutton Defendants, Dennis met in person with certain potential investment or transaction partners and EF Hutton board members from time to time in Pennsylvania on the three occasions identified in his Certification. <u>See</u> White Cert. ¶ 7. In this regard, <u>Mellon Bank (EAST) PSFS, N.A. v. DiVeronica Bros., Inc.</u>, 983 F.2d 551 (3d Cir. 1993) and <u>Roetenberg v. King & Everhard, P.C.</u>, No. 00-1452, 2000 U.S. Dist. LEXIS 16430 (E.D. Pa. 2000) (not controlling or precedential), cases cited by the EF Hutton

Defendants, that reference "occasional" or "follow-up" communications are wholly inapposite.

On September 7, 2016, this all came to a halt when the EF Hutton parties sent an e-mail to Dennis breaching and/or anticipatory breaching the Employment Agreement by their unilaterally changing the terms of the deal. <u>See</u> Am. Compl. ¶ 58-59. Dennis's employment relationship, and services and benefits rendered, are the subject of Dennis's claims against EF Hutton and the myriad contacts to and from Pennsylvania at the beginning and end of the employment relationship give rise to those claims.

In contrast, were the EF Hutton Defendants to attempt to assert personal jurisdiction in Ohio over Dennis, they would be hard pressed to do so. The EF Hutton Defendants were only located in Ohio for the last 5 weeks of the parties' employment relationship (from August 1, 2016 until EF Hutton's breach and/or anticipatory breach on September 7, 2016) and Dennis only visited Ohio once on September 1st and 2nd, 2016, the very last week of the parties' employment relationship. <u>See</u> White Cert. ¶ 3, 10. Prior to that, the in-person meetings of the parties generally were in New York City, New York and Princeton, New Jersey, or Orlando, Florida, and all communications were between locations other than Ohio and Pennsylvania. <u>See</u> White Cert. ¶ 10.

### ii. Minimum Contacts Also Exist Under The *IMO Indus.* Test

In addition, where, as here, the defendants are alleged to have committed a tort, including a statutory violation of the WCPL, the Third Circuit has established a three-part test for minimum contacts:

> First, the defendant must have committed an <u>intentional tort</u>. Second, the plaintiff must have felt <u>the brunt of the harm caused by that tort in the forum</u>, such that the forum can be said to be the focal point of the harm caused by the plaintiff as a result of that tort. Third, the defendant must have expressly <u>aimed his tortious conduct at the forum</u>, such that the forum can be said to be the focal point of the tortious activity.

<u>IMO Indus.</u>, 155 F.3d at 256.

### a. Plaintiff Alleges Intentional Torts and Violations of Statutory Rights

The Amended Complaint alleges that EF Hutton Defendants committed intentional tort by way of fraudulent inducement. In addition, the corporate shield doctrine does not protect individual officers from being subject to jurisdiction when they have violated statutory rights, such as Christopher's violation of Dennis's statutory rights under the WCPL and the 1934 Act. See Am. Compl. Counts II, III and IV. Cf. Lautman v. Loewen Grp., Inc., No. CIV. A. 99-75, 2000 WL 772818, at *8 and n. 7 (E.D. Pa. June 15, 2000) (finding specific jurisdiction over officers who engaged in conduct in violation of the WCPL and had some contacts with Pennsylvania and distinguishing cases, such as *Hunt v. Custom Cable* cited by the EF Hutton Defendants, stating "I need not decide whether a violation of the WPCL amounts to tortious conduct, however, because the plaintiff has alleged that the individual defendants violated a statutory scheme (the WPCL) for which the officers could be held personally liable).

### b. The Brunt Of The Harm Was Suffered By Dennis In Pennsylvania

Dennis, who resides in Pennsylvania and has performed the bulk of his services for the EF Hutton Defendants in Pennsylvania, has consequently felt the brunt of the harm in Pennsylvania by virtue of the EF Hutton Defendants breach of contract and duties in tort and statute. Indeed, where, as here, a Pennsylvania resident is defrauded with the result that he suffers financial loss in Pennsylvania by services that he rendered and performed from Pennsylvania, "[t]he harm from such an intentional tort could only be felt in Pennsylvania and nowhere else!" See C.D. Acquisition Holdings, Inc. v. Meinershagen, No. 05CV1719, 2007 WL 184796 at * 2-5 (W.D. Pa. Jan. 22, 2007) (emphasis in original).

### c. The EF Hutton Defendants Aimed Their Misconduct At Dennis In Pennsylvania Who Has Felt The Brunt Of The Harm In Pennsylvania

The EF Hutton Defendants aimed their misconduct conduct at Dennis in Pennsylvania in that they knowingly, intentionally and purposefully employed a Pennsylvania resident. The majority of the EF Hutton Defendants' negotiations and subsequent dealings with Dennis in his capacities as President and Director have been conducted through telephone conferences and correspondences (whether e-mails or otherwise) were directed to and from Dennis at his residence in Pennsylvania. It is from Pennsylvania where Dennis performed his duties and provided his services in the modern "digital" EF Hutton workplace on an almost daily basis for nearly two years. See White Cert. 7, 10. Dennis, who resides in Pennsylvania, has consequently felt the brunt of the harm in Pennsylvania. Further, at the time Dennis was fraudulently induced, the EF Hutton Defendants were located in New York, not Ohio. See White Cert. 3.

The communications that the EF Hutton Defendants transmitted into Pennsylvania are a sufficient basis for specific jurisdiction because they constitute the fraudulent communications that are the very basis of plaintiff's claims. See Waimberg, 52 F. Supp. 2d at 515 ("A single contact may be sufficient to subject a party to personal jurisdiction, if contacts evaluated are those that give rise to the litigation.")

Waimberg involved claims for breach of contract and tortious interference with plaintiff's employment contract. Neither the individual nor the corporate defendants who were the subject of the tortious interference claim had any specific physical connection with the forum, and the contract was to be performed in Nevada. However, the defendants communicated to the plaintiff in Pennsylvania. 52 F. Supp. 2d at 516. As in the present case, defendants aimed their actions at a known resident of Pennsylvania to whom they sent letters and made phone calls, and they knew that the brunt of their actions would be felt primarily in Pennsylvania. Id. at 517. Waimberg properly held that the

defendants could anticipate being called to answer in a Pennsylvania court for interfering with an agreement they helped to negotiate with a Pennsylvania resident notwithstanding that performance of the contract was to be in Nevada.

In Moore v. St. Paul Cos., Inc., Civ. A. No. 94- 1329, 1995 WL 11187 (D.N.J. Jan. 3, 1995) a third-party transmitted defendant's false statement into the forum. Even though the defendant did not itself send the communication into the forum, the Court held that it was "foreseeable that a [defendant's] misrepresentation made in Minnesota would accrue in New Jersey, where [plaintiff] relied on it. Certainly one whose utterance injures someone in another state may foresee being sued there." 1995 WL 11187, at * 7. See also Leonard A. Feinberg, Inc. v. Central Asia Capital Corp., Ltd., 936 F. Supp. 250, 257 (E.D. Pa. 1996) (jurisdiction based on a misrepresentation by a Hong Kong defendant to a Pennsylvania plaintiff that funds advanced to a Hong Kong supplier would be used to purchase new material, when the defendant knew the supplier would use the funds to pay pre-existing debt to the defendant); A & F Corp. v. Brown, No. Civ. A. 94-4709, 1995 WL 479411, * 2-3 (E.D. Pa. 1995) (personal jurisdiction over a fraud defendant where the only contacts were telephone and facsimile communications containing intentional misrepresentations from the out-of-forum defendant to plaintiff's officers located in Philadelphia).

Indeed, in Leonardo DaVinci's Horse, Inc. v. O'Brien, 761 F. Supp. 1222, 1227-28 (E.D. Pa. 1991), the Court held that a defendant's mere knowledge that its misconduct will harm a resident of the forum is a sufficient basis for specific jurisdiction. In Leonardo DaVinci's Horse, plaintiff was the Pennsylvania owner of a unique statue; defendant was subject to jurisdiction in Pennsylvania when it sold the statue outside Pennsylvania without plaintiff's permission and knew, or should have known, that its actions might cause harm in Pennsylvania. See also C.D. Acquisition, 2007 WL 18479, at * 5 (although none of the defendants who received the fraudulent transfers of assets to evade a Pennsylvania judgment creditor engaged in physical conduct in Pennsylvania, . . . such conduct "could

only be aimed at Pennsylvania") (emphasis in original).

The foregoing cases demonstrate that sending tortious communications (from which an action arises) into a forum, or even mere knowledge by the defendant that the harm from its tortious conduct will be felt in Pennsylvania, are sufficient for specific personal jurisdiction. Here, the EF Hutton Defendants are subject to this Court's jurisdiction because they knowingly and intentionally defrauded Dennis, a Pennsylvania resident. Much of their negotiations with, and fraudulent inducement of, Dennis, were through communications to and from Dennis in Pennsylvania, and they were aware that the harm from their misconduct would be felt by Dennis in Pennsylvania.

        **iii.**        **Traditional Notions Of Fair Play Are Not Offended By This Court's Exercise Of Personal Jurisdiction Over The EF Hutton Defendants**

Traditional notions of fair play are not offended by this Court's exercise of personal jurisdiction over the EF Hutton Defendants. The defendant bears the burden of showing that jurisdiction would offend traditional notions of fair play. See Mellon Bank, 960 F.2d at 1226 ("[O]nce the plaintiff has made a prima facie case for jurisdiction based upon minimum contacts, the burden falls upon the defendant to show that the assertion of jurisdiction is unconstitutional. This burden is met when the defendant demonstrates to the court that factors are present that make the exercise of jurisdiction unreasonable."). Here, the EF Hutton Defendants have failed to carry their burden.

To evaluate "fair play and substantial justice," a court considers the following "fairness factors": "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Pennzoil, 149 F.3d at 205-06 (citations omitted).

EF Hutton Defendants knowingly and intentionally entered this employment relationship with Dennis, a Pennsylvania resident, whereby Dennis would perform his duties and provide his services in

a modern "digital" workplace.  In connection thereto, Dennis has conducted substantial business activity both with EF Hutton and on behalf of EF Hutton in Pennsylvania on an almost daily basis for nearly two years to the benefit of EF Hutton.  See White Cert. ¶ 5, 7.  In accordance with the public policy expressly set forth in 42 P.S. § 5322(a)(4), Pennsylvania has also clearly expressed an interest in assuring a convenient forum to remedy tortious harm suffered in Pennsylvania, particularly where the defendant's conduct was aimed at Pennsylvania.   See, e.g., Stevens, 264 F.Supp.2d at 237-38. (Incongruously, all of the parties have the least contacts with Ohio during the relevant time period, than either Pennsylvania or New York).

Because the factual record, with any factual disputes being construed in favor of Dennis, supports a finding of specific jurisdiction, the EF Hutton Defendants' Motion should be denied.

To the extent that the Court may require additional evidence, which is not in Dennis's possession given his status as a former employee, Dennis respectfully requests the court to permit jurisdictional discovery and/or leave to file an Amended Complaint with any additional detail the Court may require.

## B. THIS COURT SHOULD DENY THE HUTTON DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE

The EF Hutton Defendants have also moved to dismiss Dennis's Am. Compl. for lack of venue pursuant to Fed. R. Civ. P. 12(b)(3).  "Venue rules are rules of convenience for defendants, and defendant therefore has a responsibility of asserting its privilege."  See Simon v. Ward, 80 F. Supp. 2d 464, 467 (E.D. Pa. 2000).   The EF Hutton Defendants have failed to carry their burden.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial number of acts directly giving rise to this claim occurred in the Eastern District of Pennsylvania.  As set forth above, the communications giving rise to the Employment Agreement and/or the fraudulent inducement thereof were to and from Pennsylvania and Dennis performed the majority of his services for the

benefits of the EF Hutton Defendants in Pennsylvania on an almost daily basis for nearly two years, including both telephone and e-mail communications and meetings in Pennsylvania.   On September 7, 2016, this all came to a halt when the EF Hutton parties sent an e-mail to Dennis breaching and/or anticipatory breaching the Employment Agreement by their unilaterally changing the terms of the deal. See Am. Compl. and White Cert.  These acts in Pennsylvania relating to Dennis's employment relationship, and services and benefits rendered, are the subject of Dennis's claims against EF Hutton and the myriad contacts to and from Pennsylvania at the beginning and end of the employment relationship give rise to those claims.  In contrast, the EF Hutton Defendants were only in Ohio the last five weeks of the parties' employment relationship (from August 1, 2016 until EF Hutton's breach and/or anticipatory breach on September 7, 2016) and Dennis only visited Ohio once on September 1st and 2nd, 2016, the very last week of the parties' employment relationship.  Consequently, the EF Hutton Defendants' Motion should be denied.

## C.    THIS COURT SHOULD DENY THE HUTTON DEFENDANTS' MOTION, IN THE ALTERNATIVE, TO TRANSFER

### 1.    Legal Standard Governing § 1404(a) Motion For Transfer

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4]   To justify a transfer under this section, the moving party must show that venue is proper in the transferee district and that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. See American Littoral Soc. v. U.S. E.P.A., 943 F. Supp. 548, 550. (E.D.Pa.1996); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (stating that moving party has burden of showing transfer's appropriateness). In considering this question, the Court must consider all relevant factors enunciated by the Supreme Court and further

---

[4]  The enactment of 28 U.S.C. § 1404(a) supersedes the common law doctrine of *forum non conveniens*.  See Norwood v. Kirkpatrick, 349 U.S. 29, 30 (1955).

developed by the Third Circuit.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Jumara, 55 F.3d at 879-8.  These factors fall into two groups:  those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice.  See Jumara, 55 F.3d at 879-80.  Private interests include:  (1) the "plaintiff's forum preference," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  Jumara, 55 F.3d at 879-80 (citations omitted).  See also American Littoral Soc., 943 F. Supp. at 550 (describing factors).  Public interests include:  (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases."  Jumara, 55 F.3d at 879-80.

A plaintiff's choice of forum may only be overturned when the balance of relevant considerations is strongly in favor of the defendant.  Gilbert, 330 U.S. at 508.  The central focus of the *forum non conveniens* inquiry is convenience.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249- (1981). As the movant, the EF Hutton Defendants bear the burden of demonstrating that venue should be transferred.  See Jumara, 55 F.3d at 879 (citation omitted); Myers v. America Dental Ass'n, 695 F.2d 716 (3d Cir. 1982).  All well-pleaded allegations in the complaint are generally taken as true for purposes of a motion to transfer venue unless contradicted by the defendant's affidavits, and the court may examine facts outside the complaint to determine proper venue.  See Fellner v. Phila. Toboggan Coasters, Inc., No. 05-1052, 2005 WL 2660351, at * 1 (E.D. Pa. Oct. 18, 2005); see also Abramski v.

Potter, No. 05-224, at * 1 (D. Conn. Oct. 31, 2005).

Here, the EF Hutton Defendants have not engaged in any detailed analysis of these factors but rather asserts baldly that "Transfer to Ohio is warranted. Daniels and the corporate defendants are in Ohio. Similarly, the records and documents relating to Plaintiff's claims are located in Hutton's Ohio headquarters" and arguing that "Ohio has a more significant connection to this dispute." <u>See</u> Defs' Brief, at p. 12. However, the factors governing a transfer analysis under Section 1404(a) militate in favor of retaining this forum as being the most equitable and convenient venue. This Court should retain jurisdiction.

## 2. The Factors Governing A Transfer Analysis Under Section 1404(a) Militate In Favor Of Retaining This Forum

### i. Dennis Has Selected This District In Pennsylvania As The Forum

In weighing the Section 1404(a) factors, the plaintiff's forum choice is "a paramount consideration in any determination of a transfer request," <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970), and given great weight in a motion to transfer venue. <u>See Lony v. E.I. DuPont de Nemours & Co.</u>, 886 F.2d 628, 633 (3d Cir. 1989). Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." <u>Gulf Oil</u>, 330 U.S. at 508; <u>Jumara</u>, 55 F.3d at 879, 88.

Here, Dennis has selected this District in Pennsylvania as the forum to hear this dispute, which is logical because this is where he resides and where has worked remotely from his home on an almost daily basis for nearly two years in connection with providing services and benefits to EF Hutton. This factor favors retention in the Eastern District of Pennsylvania.

### ii. The Place Where Many Of Operative Facts Occurred, Pennsylvania, Weighs In Favor Of Retention

Where the claim arose and the operative facts occurred is a factor considered in a Section 1404(a) Motion. <u>See Jumara</u>, 55 F.3d at 87 (identifying where the claim arose as a factor).

Here, the EF Hutton Defendants have not carried their burden – failing to clearly explain where it contends the operative facts occurred. Nor could EF Hutton do so because as set forth above, the operative facts directly giving rise to this claim occurred in the Eastern District of Pennsylvania. The communications giving rise to the Employment Agreement and/or the fraudulent inducement thereof, were to and from Pennsylvania and Dennis performed the majority of his services for the benefits of the EF Hutton Defendants in Pennsylvania on an almost daily basis for nearly two years, including both telephone and e-mail communications and meetings in Pennsylvania. Other than the occasional in person meetings (only two days of which were in Ohio at the very end of the employment relationship), the EF Hutton Defendants' agreements, promises, representations and dealings with Dennis that are the subject of the Amended Complaint have generally been negotiated, entered into and conducted through telephone calls and correspondences (whether e-mails or otherwise) directed to and from Dennis in Pennsylvania. Consequently, the majority of communications made, and services rendered, that are at issue in this proceeding were performed by Dennis in this District. On September 7, 2016, this all came to a halt when the EF Hutton parties sent an e-mail to Dennis breaching and/or anticipatory breaching the Employment Agreement by their unilaterally changing the terms of the deal. See Am. Compl. and White Cert. These acts in Pennsylvania relating to Dennis's employment relationship, and services and benefits rendered, are the subject of Dennis's claims against EF Hutton and comprise a myriad of the contacts at the beginning and end of the employment relationship giving rise to those claims.

In contrast, the EF Hutton Defendants were only in Ohio the last five weeks of the parties' employment relationship (from August 1, 2016 until EF Hutton's breach and/or anticipatory breach on September 7, 2016) and Dennis only visited Ohio once on September 1st and 2nd, 2016, the very last week of the parties' employment relationship. Consequently, hardly any of the operative facts occurred in Ohio and the EF Hutton Defendants' Motion should be denied.

Because the locus of operative facts is largely, if not exclusively, in this District in Pennsylvania, this factor favors retention . See Falu-Rodriguez v. Democracia USA, Inc., No. 10–3811, 2011 WL 31400, at * 3 (E.D. Pa. January 5, 2011) (Yohn, J.) (denying transfer, in part, where movant "does not explain which events relevant to this case took place" in the proposed transferee forum).

### iii.  The Convenience Of Witnesses And Availability Of Compulsory Process Weighs In Favor Of Retention

In order for the parties to present the evidence of their claims and defenses, it will be necessary to obtain information and/or testimony from numerous third-party witnesses who are key sources of evidence with respect to the issues in this case.  See also Jumara, 55 F.3d at 879-80 (identifying as a factor "the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"). When weighing the convenience of the witnesses, the burden may be met by the movant's submission of names and addresses of witnesses it plans to call, affidavits showing the materiality of those witnesses, statements made by witnesses indicating any hardships they would suffer having to testify in a different venue, and affidavits regarding any other sources of evidence. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757 n. 2 (3d Cir.1973).

Here, the EF Hutton Defendants have again not carried their burden – identifying no third-party witnesses justifying transfer.  However, the third-party witnesses relevant to this matter are nationwide and it is no more burdensome to conduct discover of them from this District, than anywhere else. Indeed, it is arguably less burdensome in that many are from New York and Connecticut which is closer to Pennsylvania than Ohio (and with respects to New York city within the subpoena power of the Court).  See Falu-Rodriguez v., 2011 WL 31400, at * 3 (denying transfer, in part, where movant "has not specifically identified any such witnesses, discussed the testimony that those witnesses would provide, or explained the importance of such testimony").  Dennis has identified the following

witnesses germane to the claims and defenses to this proceeding, in particular with regard to the

services he performed and benefits he conferred  both as Director and as President for EF Hutton, in

addition to himself (Pennsylvania) and Christopher (Ohio):

- Frank Campanale, former Chairman of the Board of EF Hutton, worked remotely from Michigan during the times relevant to Dennis s claims.  Upon information and belief, he currently resides in Michigan.

- John Lohr, an attorney for EF Hutton, worked remotely for EF Hutton from Wyoming and Florida during the times relevant to Dennis's claims.  Upon information and belief, he currently resides in Wyoming.

- Craig Marshak, a member of the Board of EF Hutton who, during the times relevant to Dennis's claims, worked remotely for EF Hutton in London and worked for EF Hutton in New York City, New York.  Upon information and belief, he currently resides in London with his family and New York City, NY.[5].

- Robertson Jorgensen, a national sales person for EF Hutton who, during the times relevant to Dennis's claims, worked remotely for EF Hutton in Reno, Nevada.  Upon information and belief, he currently resides Reno, Nevada.

- Stanley Hutton Rumbough, now Co-Chairman of the Board of EF Hutton who, during the times relevant to Dennis's claims, worked remotely for EF Hutton in Connecticut and for EF Hutton in New York City, New York.  Upon information and belief, he currently resides in Connecticut.

- Bruce Ventigmilia of Saratoga Capital. Mr. Ventigmilia resides in Goodyear Arizona.[6]

- David Weild of Weild & Company.  Mr. Weild works and/or resides in New York City, NY.

- Terry Herzog of Herzog Capital Management.  Mr. Herzog works and/or resides in New York City, NY.

- Michael Ning of Arque Capital.

See White Cert. ¶ 11.

The vast majority of these witnesses are outside the subpoena power of either the Eastern

---

[5] Dennis has also stated that Marshah will have knowledge of Mr. Marshak will have knowledge of the facts relating that there was to be a Los Angeles-area office for EF Hutton that Dennis would telecommute from and as to his meeting with Dennis in Philadelphia, PA on EF Hutton business.  See White Cert. ¶ 11.

[6] Dennis has also stated that Ventigmilia  will have knowledge of the facts relating to his meeting with Dennis in Philadelphia, PA on EF Hutton business.  See White Cert. ¶ 11.

District of Pennsylvania or the Southern District of Ohio. The New York City witnesses may be within

the subpoena power of the Eastern District of Pennsylvania. See Jumara, 55 F.3d at 879 (noting that

convenience of the witnesses considered "to the extent that the witnesses may actually be unavailable

for trial in one of the fora").

Consequently, the location of third-party witnesses and the availability of compulsory process

weighs in favor of retention or, at most, is neutral. See Moy v. Rose View Center, No. 05-6300, 2006

WL 3511687, at * 5 (E.D. Pa. December 05, 2006) (Yohn, J.) (denying motion to transfer, in part,

where movant failed to show third-party witnesses were not available, or less convenience by, proposed

transferee district) (Yohn, J.).

### iv.  The Convenience Of The Parties Is A Neutral Factor

The EF Hutton Defendants have not discussed this factor, nor does it weigh in favor of transfer.

This factor is a neutral factor. With respect to party witnesses, such as Christopher for EF Hutton or

Dennis for himself, and their respective counsel, this factor is in equipoise. Dennis and his counsel are

both located in this District. The EF Hutton Defendants are presently located in Ohio with local

counsel in Pennsylvania and their other counsel, Doug Norberg, Esq., being in Colorado.[7]

### v.  The Location of The Documents Is A Neutral Factor

The EF Hutton Defendants have not discussed this factor, nor does it weigh in favor of transfer.

This factor is a neutral factor. The EF Hutton Defendants and their records are allegedly presently

located in Ohio. Dennis and his office and records are located in Pennsylvania. The EF Hutton

Defendants have not explained how their documents – in this  modern age of electronic production and

.pdf files – would be difficult to produce at trial in this District. Consequently, the "location of

documents and other evidence" also weighs in favor of retention. See Falu-Rodriguez, 2011 WL

---

[7] Plaintiff was asked by the EF Hutton Defendants' local counsel whether Plaintiff consents to "To the admission of Doug Norberg *pro hac vice* on behalf of the Defendants.  As I am sure you are aware, Attorney Norberg is counsel for the EF Hutton entities."  Plaintiff has so consented, but to date no *pro hac* motion has been filed, perhaps awaiting a determination of this Motion. See 12/14/16 E-mail and response attached hereto as Exhibit "3".

31400, at * 3 (denying motion to transfer, in part, where movant "neglected to specify which documentary evidence, located in the [transferee district], would be difficult to produce at trial in Philadelphia).

### vi. The Governing Law Weighs In Favor Of Retention

The interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action is a factor which weighs in favor of retaining this matter in this Court. See Gilbert, 330 U.S. at 509. See also Jumara, 55 F.3d at 879-80 (identifying as a factor "judicial familiarity with the applicable state law"). The EF Hutton Defendants have not discussed this factor, nor does it weigh in favor of transfer. To the contrary, it weighs in favor of this matter remaining the Eastern District of Pennsylvania insofar as Dennis has asserted claims arising under Pennsylvania common law concerning breach of contract and fraud. In response thereto, Defendants cite to Pennsylvania law with respect to Dennis's claims and concede its applicability in to this matter. Dennis's claims also implicate Pennsylvania statutory law concerning the WCPL. See Godfry v. State Farm Mut. Ins. Co., No. 08–4813, 2009 WL 564636, at * 11 (E.D. Pa. March 4, 2009) (Yohn, J.) (denying motion to transfer, in part, where "Pennsylvania law applies to this case, and the court is familiar with Pennsylvania law").

### vii. The Relative Means Of The Parties Weighs In Favor Of Retention

Another factor is the relative means of the parties. See also Jumara, 55 F.3d at 279-80 (identifying as a factor "the convenience of the parties as indicated by their relative physical and financial condition"). Again, the EF Hutton Defendants fail to discuss or demonstrate that this factor weighs in favor of transfer; nor could it realistically do so insofar as they are a corporate entity which has breached its obligations to pay salary and benefits to Dennis. See Moy, 2006 WL 3511687, at * 5 (denying motion to transfer, in part, because "the convenience of the parties as indicated by their relative physical and financial conditions does not support transfer. Financially, defendants possess

greater resources than plaintiff"); <u>Gonzalez v. Electronic Control Systems, Inc.</u>, No. 93-3107, 1993 WL 372217, at * 5 (E.D. Pa. 1993) (denying motion to transfer, in part, where "it would be easier for defendant, a substantial corporation, to bear the costs of travel rather than plaintiffs because Mr. Gonzalez lost his job and went through a substantial period of unemployment") (Yohn, J).

        viii.    **Public Interests Such As Trial Efficiency And The Interests Of Justice, And The Fact The Matter Is Already Pending In The Eastern District Of Pennsylvania, Weigh In Favor Of Retention**

Considerations concerning the public interests such as trial efficiency and the interests of justice considered in a *forum non conveniens* analysis include, but are not limited to, the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; and the unfairness of burdening citizens in an unrelated forum with jury duty. <u>See</u> <u>Gilbert</u>, 330 U.S. at 509; <u>Jumara</u>, 55 F.3d at 279080.

Again, the movant EF Hutton Defendants fail to discuss or demonstrate that this factor weighs in favor of transfer nor could it do so because it weighs, instead, in favor of retention.

Here, Pennsylvania and this District have a significant interest in having the dispute between the parties concerning the rights of Dennis, a Pennsylvania resident in this District, for compensation in connection with services that he largely rendered in in this District for the benefit of the EF Hutton Defendants. Indeed, it was only in the last days of the parties' employment relationship, that any activities related to EF Hutton even took place in Ohio. <u>Compare</u>, <u>Hyland Software</u>, 2003 WL 22928644, at * 7 (transferring on *forum non conveniens* grounds where New York has little connection to this action, and the center of gravity of this litigation is in other state); <u>U.S., ex rel. Penizotto v. Bates E. Corp.</u>, CIV.A. 94-3626, 1996 WL 417172 (E.D. Pa. July 18, 1996) (granting motion to transfer, in part because "The burden of jury duty ought not to be imposed on people of a community who have no relation to the litigation").

Finally, the matter is already pending here and, upon the Court's disposition of the issues in this

motion, is ready to proceed.  This too weighs in favor of retention.

ix. **In Conclusion, A Balancing Of All Factors Militates In Favor Of Retention**

The Movant EF Hutton Defendants utterly failed to carry their burden to demonstrate that a transfer is warranted under Section 1404(a).  Consequently, this matter should be retained by the Eastern District of Pennsylvania.  See Godfry, 2009 WL 564636, at * 12(denying motion to transfer where "the relevant factors to consider when determining whether to transfer under § 1404(a) weigh in favor of retaining, rather than transferring this case").

D. **Transfer Under § 1631 Is Also Not Warranted**

The EF Hutton Defendants further argue that this case may be transferred pursuant to 28 U.S.C. § 1631.  However, § 1631 is only applicable by its terms to where a Court finds it is lacking jurisdiction, stating:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  As set forth above, this Court has personal jurisdiction over the EF Hutton Defendants.  The EF Hutton Defendants have not challenged the subject matter jurisdiction of this Court by virtue of diversity and the Dennis's 1934 Act Claim.  Consequently, the Motion to Transfer should be denied.

## E.   THIS COURT SHOULD DENY THE EF HUTTON DEFENDANTS' MOTION TO DISMISS PURSUAN TO 12(b)(6)

### 1.   Standard Governing a 12(b)(6) Motion

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Fed. R. Civ. P. 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  "In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court 'accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Warner v. Orleans Home Builders, Inc., 550 F. Supp. 2d 583, 587 (E.D. Pa. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  "To survive a motion to dismiss, a … plaintiff must allege facts that 'raise a right to relief above the speculative level....'" Warner, 550 F. Supp. 2d 5at 587 (quoting Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.2007 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). In other words, a complaint need only contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted.  Warner, 550 F. Supp. 2d 5at 587 (quoting Phillips, 515 F.3d at 234; cf. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235-236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (quoted in Twombly, 127 S.Ct. at 1965)).

### 2.   In Count I, Dennis Has Stated A Claim for Breach Of Contract Upon Which Relief May Be Granted

To state a claim for breach of contract, Dennis  "must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 883 (Del.

Ch. 2009). <u>See also</u> <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone</u> <u>Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016) (stating "It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages").

The EF Hutton Defendants attempt to assert their recast version of the disputed allegations over the allegations of Dennis in Amended Complaint in the Motion to Dismiss context. Such is not the law in Federal Court. This Court is required to accept as true all well-pled allegations of Dennis's Amended Complaint and any reasonable inferences therefrom. <u>Warner v. Orleans Home Builders,</u> <u>Inc.</u>, 550 F. Supp. 2d at 587 .

Taking Plaintiff's allegations as true, as the Court must, Dennis is not alleging that the October Term Sheet ("Term Sheet") constitutes the Employment Agreement. Rather, Dennis alleged that the Term Sheet formed the basis for discussion and that, thereafter, the parties concluded their negotiations and mutually entered into a binding oral Employment Agreement in October 2014 that encompassed most of the Term Sheet's terms with the exception of two items in the Term Sheet relating to salary and Dennis's location. <u>See</u> Am. Compl. ¶ 19-20, 30, 63.[8] Dennis further alleged that, with respect to salary and location that: (i) "that Dennis would be paid $250,000 a year plus other expenses (including an office) to address the tax consequences and his personal costs of going to Los Angeles to establish the West Coast office for EF Hutton providing EF Hutton a national presence from coast to coast"; and, that (ii) "because EFA was to be a "digital" firm, while Dennis may be located in Los Angeles, he could also telecommute and/or maintain a virtual presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida, Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location from time to time." <u>See</u> Am. Compl. ¶ 31-33,

---

[8] The Term Sheet itself provides that it may serve as the basis for discussion, stating "This is provided for illustrational purposes only. This is not an offer. This is an indication of the basis upon which an offer may be extended by the company and includes many, but not all terms that would have to be understood before an offer is made." <u>See</u> Term Sheet, attached to Appendix of Defs' Motion

63.  Further, Dennis alleged that the parties agreed that "President, Dennis was to report to the CEO, Christopher, that Dennis's was to plan strategic direction; market the firm to financial advisors and trade, assist the CEO in communicating the firm's message internally and externally, establish compensation, and policies and procedures, and that Dennis was to start after EF Hutton closed on financing sufficient to commence business operations."  See Am. Compl. ¶ 30, 63.

These promises, containing sufficiently definite terms to be clearly understood by the parties and to form the basis for their bargain, created a binding employment contract between Dennis and EF Hutton. See Pulse Technologies, Inc. v. Notaro, 620 Pa. 322, 326, 67 A.3d 778, 780-81 (2013) ("evidence of mutual assent to employ and be employed which contains all the elements of a contract may be construed as a binding contract of employment though not reduced to writing").

Dennis has further, alleged that the Employment Agreement was breached and/or anticipatorily breached.  "[B]ecause EF Hutton was, finally, able to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives, Dennis expected Defendants would shortly be able to honor such promises and that the Agreement which had been negotiated two years ago in accordance with the October 2014 Term Sheet and subsequent revisions agreed to by Dennis and Defendants".  See Am. Compl. ¶ 57, 64.  However, "On September 6, 2016, much to Dennis's surprise and dismay, EF Hutton unilaterally changed the terms of the Agreement" and, consequently, refused to honor the Employment Agreement now that it was time to perform the Employment Agreement and to pay Dennis his promised salaries and benefits thereunder over the next two years.  See Am. Compl. ¶ 58-61, 65-66.  This refusal to perform constitutes an anticipatory breach under Pennsylvania law.  See William B. Tanner Co. v. WIOO, Inc., 528 F.2d 262, 268–69 (3d Cir. 1975) (stating that to establish an anticipatory breach of contract, "Pennsylvania requires as an element '. . . an absolute and unequivocal refusal to perform or a distinct and positive statement of inability to do so.") (citations omitted).

As a consequence, Dennis has not received the promised salary and other benefits under the Employment Agreement to his detriment. See Am. Compl. ¶ 65-66, 69.

Dennis has stated sufficient facts to support his breach of contract claim against EF Hutton . EF Hutton is not entitled to have finder of fact choose between the parties' competing versions of events or characterizations of the negotiations at this stage of the pleadings. While Dennis sought to allege the foregoing in a "short and plain statement" as to the parties' oral Employment Agreement pursuant to Fed. R. Civ. P. 8(a), if the Court requires even more detail broken down individually in lieu of the EF Hutton Parties conducting discovery, then Dennis requests leave to file an Amended pleading.

With respect to Dennis's allegation of the breach of the implied covenant of good faith and fair dealing in Count I, he has not asserted it as a separate claim, but rather has done so as part of the breach of contract claim as required by Pennsylvania law. See, e.g. Hanaway v. Parkesburg Grp., LP, 2015 PA Super 263, 132 A.3d 461, 471 (2015), appeal granted in part, 138 A.3d 608 (Pa. 2016) (stating "breach of the covenant of good faith and fair dealing is a breach of contract action, not an independent action for breach of a duty of good faith"); McHale v. NuEnergy Group, No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002) (stating "A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing").

Under Pennsylvania law:

> The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties. In essence, the duty to act in good faith and deal fairly infuses the parties' performance of their express contractual obligations. In determining whether there has been a breach of contract, we evaluate the conduct of a party through the lens of good faith and fair dealing. With slight variances due to context, good faith is understood to mean "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness.", we defined the duty

> of good faith as "[h]onesty in fact in the conduct or transaction concerned."

Hanaway, 2015 PA Super 263, 132 A.3d at 471–72 (citations omitted).  Here, Dennis has alleged that the duty of good faith has been violated because in unilaterally changing the terms of the Employment Agreement, Dennis has been deprived of the fruits of his efforts for the past two years in expectation of EF Hutton's performance of its obligations under the Employment Agreement.  See Am. Compl. ¶ 58-60, 67-68.

For the foregoing reasons, Dennis has stated a claim in Count I of the Am. Compl. for Breach of Contract against EF Hutton upon which relief may be granted and Defendants' Motion should be denied.  If for whatever reason, the Court feels that allegations require more specificity or are defective, then Dennis respectfully requests leave to file an amended pleading to cure any defects that the Court may identify.

### 3. In Count II Dennis Has Stated A Claim For Breach Of The Pennsylvania Wage Payment and Collection Law ("WPCL") Upon Which Relief May Be Granted

The Pennsylvania WPCL protects the rights of employees to recover wages to which they are contractually entitled.  Hartman v. Baker, 766 A.2d 347, 352 (Pa. Super. Ct. 2000).  43 Pa. Cons. Stat. Ann. §§ 260.1 et seq.  Pursuant to the WPCL, every employer is obligated to pay all wages due to its employees.  See 43 Pa.C.S. § 260.3(a). Pursuant to the WPCL, an employer includes but is not limited to "every person, firm or partnership, association, corporation, receiver, … or any of the above mentioned classes employing any person in this Commonwealth."  See 43 Pa.C.S. § 260.2a  Pursuant to 43 Pa.C.S. § 260.2a and Faden v. deVitry, 625 A.2d 1236 (Pa. Super. Ct. 1993), Christopher and any other officers of EF Hutton who participated in refusing to pay Dennis's duly earned compensation wages are personally liable for same plus legal fees and a 25% statutory penalty under the WPCL.

Dennis has pled that he is a person in the Commonwealth employed by EF Hutton.  See Am.

Compl. ¶ 73.  He is a resident of Pennsylvania and the majority of the EF Hutton Defendants' dealings with Dennis in his capacity as President of EFC have been conducted through telephone conferences and correspondences (whether e-mails or otherwise) directed to and from or conducted by Dennis from his residence in Pennsylvania.  See Am. Compl. ¶ 73.

The EF Hutton Defendants argue that Dennis has failed to state a claim under the WPCL because there is no written contract of employment and because Dennis failed to allege that D Defendants failed to pay him within 15 days of the end of any applicable pay period.  Both contentions are without merit.

First, as set forth above, Dennis has pled the existence of an oral Employment Agreement.  The WPCL does not require that it be written, only that in the case of an unwritten contract, the compensation earned "shall be due and payable…within the standard time lapse customary in the trade or within 15 days from the end of such pay period." 43 PS § 260.3 (emphasis added).  See Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015) (stating that an employee may establish an oral contract of employment to recover under the WPCL).

Second, in that regard, Dennis has alleged that his salary has become due and payable "because EF Hutton was, finally, able to proceed with commencing with its operations having established avenues to obtain a combination of private financing and governmental economic incentives" however, the EF Hutton Defendants have refused to perform under the Employment Agreement and to pay him the salary and benefits owed thereunder which were to commence after the opening of the EF Hutton Tower in Ohio on September 2, 2016.  See Am. Compl. ¶ 54, 57-60, 76-77.  Indeed, the September 2, 2016 press release concerning the opening of the new Springfield Ohio headquarters referenced Dennis to the world as the "designated operating company President".  See Am. Compl. ¶ 54.  Due to EF Hutton's anticipatory breach of the Employment Agreement with Dennis, payment was never made

within either "the standard time lapse customary in the trade or within 15 days from the end of such pay period" and this may be fairly inferred from Dennis's factual allegations.

For the foregoing reasons, Dennis has stated a claim in Count II of the Am. Compl. of the WPCL against EF Hutton and Christopher upon which relief may be granted and Defendants' Motion should be denied. If for whatever reason, the Court feels that allegations require more specificity or are defective, then Dennis respectfully requests leave to file an amended pleading to cure any defects that the Court may identify.

**4. In Count III, Dennis Has Stated A Claim For Fraud In The Inducement Upon Which Relief May Be Granted**

**i. Dennis has Pled The Elements of Fraud In The Inducement Claim With Particularity, Including Justifiable Reliance And Damages**

Under Pennsylvania law, "[t]he elements of fraud in the inducement are as follows:(1) a representation;(2) which is material to the transaction at hand;(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;(4) with the intent of misleading another into relying on it;(5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." See Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa.Super.Ct.2005) (internal quotations and citations omitted). Fed. R. Civ. P. 9(b) requires that fraud be pled with "particularity." "Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud. Its purpose was to prevent general allegations of fraud that did not give defendants fair notice of the charges against them." See U.S. v. Kensington Hosp., 760 F. Supp. 1120 (1991) (citations omitted).

In the Amended Complaint, contrary to the EF Hutton Defendants' contentions, Dennis specifically alleges within the meaning of Fed. R. Civ. P. 9(b) (i) when the fraudulent inducement occurred – October 2014, (ii) who made them - the EF Hutton Defendants through Christopher, and (iii) what promises were made by the EF Hutton Defendants, through Christopher, in October of 2014.

Specifically, Dennis alleges that on multiple occasions in or around October 2014, the EF Hutton Defendants, through Christopher, falsely promised and represented, even though they had no intention of doing so, that they would make Dennis President of EF Hutton and to provide him with salary, bonuses, equity incentives and other benefits from EF Hutton once EF Hutton purchased the EF Hutton closed on financing sufficient to commence business operations.  See Am. Compl. ¶ 79-80. The specific terms of the promises were encompassed by most of the Term Sheet's terms with the exception of two items in the Term Sheet relating to salary and Dennis's location.  See Am. Compl. ¶ 19-20, 30, 63.  Dennis further alleged that, with respect to salary and location that: (i) "that Dennis would be paid $250,000 a year plus other expenses (including an office) to address the tax consequences and his personal costs of going to Los Angeles to establish the West Coast office for EF Hutton providing EF Hutton a national presence from coast to coast"; and, that (ii) "because EFA was to be a "digital" firm, while Dennis may be located in Los Angeles, he could also telecommute and/or maintain a virtual presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida, Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location from time to time."  See Am. Compl. ¶ 31-33, 63.  Finally, the EF Hutton Defendants promised to make good on these promises "after EF Hutton closed on financing sufficient to commence business operations".  See Am. Compl. ¶ 30.

These representations were material to Dennis' decision to enter into the Employment Agreement and, in anticipation of the EF Hutton Defendants' performance thereunder, to begin to provide services as Director and President to hasten the day when EF Hutton would be able to commence business operations.  See Am. Compl. ¶ 83-84.  Dennis's reliance both then and thereafter was reasonable in light of the steps that the EF Hutton Defendants took to set the stage for performance, including but not limited to (i) public SEC filings demonstrating the progress of the EF Hutton enterprise, (ii) making Dennis a director on or about August 29, 2014 and providing

compensation related to his director role and (ii) at the time of incorporation of EFC on or about October 27, 2014, Dennis was named its President. See Am. Compl. ¶ 17, 23, 34, 36, 39, 40, 41, 44, 45, 46, 47, 48, 49. Contrary to the EF Hutton Defendants' assertions, the Term Sheet did not state that any agreements thereafter had to be in writing nor did it bar any subsequent agreements utilizing its terms in whole or in part. Further, Dennis alleges that the negotiations ended and the parties agreed on the terms of the Employment Agreement as set forth above.

Dennis has also specifically alleged damages in that he provided more than two years of services to the Defendants and provides relating to his duties as President in anticipation of the EF Hutton Defendants' performance of their promises. See Am. Compl. ¶ 84. These duties were separate and distinct from his duties as a Director. See Am. Compl. ¶ 51 (stating "In contrast to the high level supervisory-only governance type duties associated with Dennis' Directorship role, in his capacity as President, Dennis worked tirelessly to assist on an almost daily basis with introductions to EF Hutton and Christopher, strategic decisions, acquisition attempts, investments, sales and marketing work, and conference calls with Christopher, with the Board, and with others involved in the nascent EF Hutton enterprise"). Dennis performed these duties without compensation, for the benefit of the EF Hutton Defendants, in reliance on their fraudulent misrepresentations. See Am. Compl. ¶ 51-53, 56.

Dennis has further alleged "EF Hutton knowingly or recklessly made false representations, through Christopher, with no intention of honoring them, in order to induce Dennis to provide his services, and to lend his name and reputation, to their nascent enterprise." See Am. Compl. ¶ 81. Consequently, Dennis has stated a claim for fraud. The cases cited by the EF Hutton Defendants to the contrary, Fishkin v. Susquehanna Partners, G.P., No. 03-3766, 2006 U.S. Dist. LEXIS 34862, (E.D. Pa. May 31, 2006) and Shoemaker v. Commonwealth Bank, 700 A.2d 1003 (Pa. Super. Ct. 1997)are distinguishable and inapposite in that a promise to do something in the future which is "[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact."

"[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." See discussion Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments, 951 F.2d 1399, 1410 (3d Cir. 1991) (collecting cases and authorities).

Consequently, Dennis has specifically alleged the elements of a claim upon which relief may be granted for fraudulent inducement in Count III.

> ### ii.    The Gist Of The Action Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim

Besides challenging the pleading of Dennis's fraudulent inducement claim, the EF Hutton Defendants trot out a series of legal doctrines in an effort to evade liability for their fraud. Plaintiffs' fraudulent inducement claim is not barred by the "gist of the action" doctrine because they arise from independent social duties and not from the terms of the Employment Agreement.  Under Pennsylvania law, when a plaintiff alleges that a defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts will examine the claim and determine whether the "gist" or gravamen of the claim sounds in contract or in tort.  See, e.g., Redevelopment. Auth. of Cambria County v. International Ins. Co., 454 Pa. Super. 374, 392, 685 A.2d 581, 590 (1996); Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 444 Pa. Super. 221, 229, 663 A.2d 753, 757 (1995); Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 833 (E.D. Pa.2000); Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp.2d 644, 650 (W.D. Pa. 1999); Factory Mkt., Inc. v. Schuller Int'l Inc., 987 F. Supp. 387, 394 (E.D. Pa. 1998). "The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" Jones v. ABM AMRO Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010) (quoting Reardon v. Allegheny Coll., 926 A.2d 477, 486-87 (Pa. Super. 2007). See also Chemtech International, Inc. v. Chemical Injection Technologies, Inc., 170 Fed. Appx.

805, 809 (3d Cir. March 20, 2006) (citing <u>Sullivan v. Chartwell Investment Partners, L.P.,</u> 2005 PA Super 124, 873 A.2d 710, 719 (Pa.Super.2005). <u>See also</u> <u>Cambria County,</u> *454* Pa. Super. at 392, 685 A.2d at 590.

Here, Dennis has asserted claims of fraud in the inducement. <u>See</u> Amended Claims, Count III. Pennsylvania state courts have held that these types of tort claims are not barred by the gist of the action doctrine. For example in <u>Mirizio v. Joseph</u>, 2010 PA Super 70, 4 A.3d 1073 (Pa. Super. Ct. 2010), the Pennsylvania Superior Court found that the defendant land purchaser's actions in regard to prospective co-purchaser constituted fraud in the inducement of the contract, and thus gist of the action doctrine did not bar fraud and misrepresentation claim against purchaser, where facts indicated that purchaser never intended to perform his duties, that he intended to cut co-purchaser out of her share of the profit from rehabilitation of the property, and that purchaser knew that co-purchaser would have no other option than to accept his eventual offer to buy the property as a condominium.

Similarly in <u>Sullivan v. Chartwell Investment Partners</u>, L.P., 2005 PA Super 124, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) plaintiff employee appealed the trial court's sustaining defendant's Preliminary Objections and dismissing plaintiff's Complaint. The trial court found that the gist of the action doctrine barred prosecution of all of plaintiff's fraud and negligent misrepresentation claims. Appellee argued that Appellant "fraudulently and/or negligently agreed to perform obligations that it never intended to perform in order to induce Appellant to agree to the proposed changes to his compensation package and to forgo an immediate resignation." Id. at 719. The Superior Court concluded that because "Appellant's tort claims related to the inducement to contract, they were collateral to the performance of the contracts and therefore, are not barred by the gist-of-the-action doctrine." *Id.* The Superior Court held that when "tort claims relate to the inducement to contract, they are collateral to the performance of the contract and therefore, are not barred by the gist-of the action doctrine." <u>Id.</u> (citing <u>Air Products and Chemicals, Inc. v. Eaton Metal Products Co.</u>, 256 F.Supp.2d

329, 341 (E.D.Pa.2003) (noting distinction between fraud in performance and fraud in inducement claims: "fraud in the inducement claims are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists."). See also The Brickman Grp., Ltd. V. CGU Ins. Co., 865 A.2d 918, 928 (Pa. Super. Ct. 2004) (stating that "the law appears to permit fraud in the inducement claims in disputes involving contractual obligations, notwithstanding that the gist of the action doctrine would bar claims of fraudulent (non)performance).

Much like in Mirizio, the allegations of the Amended Claims demonstrate that the EF Hutton parties here never intended to honor their promises in the Employment Agreement which induced Dennis to provide time and services and his reputation to the launch of EF Hutton. Once launched and it was time to perform, the EF Hutton Defendants' intent became manifest to Dennis.

While there is a body of federal court decisions in this District that predicts the Pennsylvania Supreme Court may hold otherwise, e.g. the cases cited by the EF Hutton Defendants, Vives v. Rodriguez, 849 F. Supp. 2d 507, 521 (E.D. Pa. 2012) and De Berardine v. Weiner, No. 16-864, 2016 U.S. Dist. LEXIS 97116, at *13-14 (E.D. Pa. July 26, 2016), the Pennsylvania Supreme Court has yet to do so and, at this early stage in the absence of guidance from the Pennsylvania Supreme Court this Court should refrain from dismissing the claim. This particularly where the EF Hutton Defendants *deny that a contract even exists and where* **Dennis**'s fraud damages are distinct from his contract *damages*, e.g. the fraudulent inducement claim seeks the value of his services already rendered for the nearly two years in which he to the EF Hutton Defendants relating to his duties as President in anticipation of the EF Hutton Defendants' performance of their promises. See Am. Compl. ¶ 84. Consequently, at a minimum, Dennis should be permitted to plead this claim in the alternative in the absence of a contract.

Consequently, under Pennsylvania law the gist of the action doctrine should not bar Dennis's claims. It is for reasons such as these, that Courts in the Eastern District and in Pennsylvania State

Court  "have cautioned against deciding whether the gist of an action is in contract or tort at the motion to dismiss stage of a proceeding." Turuvekere v. ContinuServe, LLC, No. 12-5158, 2012 WL 5961957 (E.D. Pa. Nov. 28, 2012) (citing Weber Display & Packaging v. Providence Washington Ins. Co., No. 02–7792, 2003 WL 329141, at *41 (E.D. Pa. Feb.10, 2003) and Caudill Seed, 123 F.Supp.2d at 833. See also, e.g., Grode v. Mutual Fire, Marine, & Inland Ins. Co., 623 A.2d 933 (Pa. Cmwlth. 1993)("a tort claim in a contractual relationship for services should not be dismissed at an early stage of proceedings prior to the production of evidence."); Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 418 (E.D. Pa. 2006)(" At this stage of the litigation, [c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry.")(quoting Haymond v. Lundy, 2000 U.S. Dist. LEXIS 8585, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000)).  Consequently, at a minimum, at this early stage in the proceeding with the contract claims disputed, dismissal of the fraudulent inducement claim is premature.

### iii.    The Economic Loss Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim

Dennis's fraudulent inducement claim is not barred by the "economic loss" doctrine because the claim sounds in fraud, not negligence.  Since Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618(3d Cir. 1995) and Freedom Props., L.P. v. Lansdale Warehouse Co., No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *22 (E.D. Pa. Aug. 2, 2007), cited by the EF Hutton Defendants, the Pennsylvania Supreme Court has defined the economic loss doctrine as stating that "no cause of action exists for *negligence* that results *solely* in economic damages unaccompanied by physical injury or property damage." Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania, 604 Pa. 50, 53, 985 A.2d 840m 841 (Pa.2009) (emphasis added).  Accordingly, the economic loss rule is

inapplicable to this matter, and the EF Hutton defendants' Motion to Dismiss on this basis is
inappropriate and should be denied.

> iv. **The Corporate Shield Doctrine Does Not Bar Dennis's Fraudulent Inducement Claim Against Christopher**

With respect to Christopher's liability as an actor due to his actions and inactions, the EF Hutton
Defendants misstate the applicable law and Dennis's allegations in the Amended Complaint.  An
individual's status as an officer or employee of a corporation "does not provide an automatic shield for
their activities."  See Schiller-Pfeiffer, Inc. v. County Home Products, Inc., No. Civ. A. 04-CV-1444,
2004 WL 2755585, at * 5 (E.D. Pa. Dec. 1, 2004) (citation omitted).  See also Wicks v. Milzoco
Builders, Inc., 503 Pa. 614, 622, 470 A.2d 86, 90 (1983) (stating "The general, if not universal, rule is
that an officer of a corporation who takes part in the commission of a tort by the corporation is
personally liable therefor…").  Dennis has specifically alleged that all of the fraudulent
misrepresentations  made by the EF Hutton Defendants were through Christopher.  See Am. Compl. ¶
19, 30-33, 79-82.  Consequently, the Corporate Shield Doctrine does not bar Dennis's fraud in the
inducement claim against Christopher.

For the foregoing reasons, the EF Hutton defendants' Motion to Dismiss Count III is consequently,
inappropriate and should be denied.  If for whatever reason, the Court feels that allegations require
more specificity or are defective, then Dennis respectfully requests leave to file an amended pleading to
cure any defects that the Court may identify..

> 5. **In Count IV Dennis Has Stated A Claim for Breach Of The Securities Exchange Act of 1934 Upon Which Relief May Be Granted**

Rule 10b-5, like § 10(b) of the Act itself, broadly prohibits deception, misrepresentation, and
fraud in connection with the purchase or sale of any security.  See Merrill Lynch, Pierce, Fenner &
Smith Inc. v. Dabit, 547 U.S. 71, 126 S. Ct. 1503 (2006).  To pursue a private cause of action under
Section 10(b) of the Securities Exchange Act or under Rule 10b(5) "requires proof of six elements: (1)

a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, *i.e.*, a causal connection between the material misrepresentation and the loss." In re Aetna Sec. Litig., 617 F.3d 272, 277 (3d Cir. 2010). Stock options, like those at issue here, are sufficient to fulfill the "in connection with" the sale of securities element." In re Zoran Corp. Derivative Litig., 511 F. Supp. 2d 986, 1011–12 (N.D. Cal. 2007) (citing Falkowski 1012  v. Imation Corp., 309 F.3d 1123, 1129–30 (9th Cir. 2002). To the extent PSLRA is applicable, over and above Fed. R. Civ. P. 9(b), Dennis has pled his facts with particularity as well as the misleading statements and why they are misleading.

Dennis has alleged the specific misrepresentation as to which he relies upon for this Count, as well as when it was made and by whom, alleging that the EF Hutton Defendants, through Christopher in October 2014 falsely and knowingly "represented they would make Dennis President of EF Hutton and to provide him with salary, bonuses, equity incentives and other benefits from EF Hutton once EF Hutton purchased the EF Hutton licensing and branding rights and closed on financing sufficient to commence business operations". See Am. Compl. ¶ 20, 30-33, 88-90, 94. These representations were false as evidenced by EF Hutton's failure to perform on the representations. See Am. Compl. ¶ 58-59, 89. Dennis reasonably relied on these misrepresentations in deciding to personally purchase 100 shares of stock in the Company one month later in December 2014 in order to "and to show his commitment to EF Hutton" and "in the expectation of receiving and/or exercising further stock and/or options pursuant to the [Employment] Agreement's terms. See Am. Compl. ¶ 35, 92, 93. As a direct and proximate result of Defendants' fraud, Dennis has suffered economic loss through his purchase of stock in EF Hutton in reliance on such promises. See Am. Compl. ¶ 94.

For the foregoing reasons, Dennis has stated a claim upon which relief may be granted and EF Hutton Defendants' Motion to Dismiss Count IV, consequently, should be denied. If for whatever

reason, the Court feels that allegations require more specificity or are defective, then Dennis

respectfully requests leave to file an amended pleading to cure any defects that the Court may identify.

> **6.      In Count V Dennis Has Stated A Claim for Promissory And/Or Equitable Estoppel Upon Which Relief May Be Granted**

The EF Hutton  Defendants have also moved with respect to Count V of Dennis's Amended

Complaint (estoppel asserted by Dennis against the EF Hutton Parties) for failure to state a claim upon

which relief can be granted.

Under Pennsylvania law, promissory estoppel arises when "(1) the promisor made a promise

that he should have reasonably expected to induce action or forbearance on the part of the promisee, (2)

the promisee actually took action or refrained from taking action in reliance on the promise, and (3)

injustice can be avoided only by enforcing the promise." Crouse v. Cyclops Indus., 560 Pa. 394, 402-

403 (Pa. 2000) (citation omitted).   "[e]quitable estoppel arises when one by his acts, representations, of

admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence

induces another to believe certain facts to exist and such other rightfully relies and acts on such belief,

so that he will be prejudiced if the former is permitted to deny the existence of such facts." Liberty

Prop. Trust v. Day-Timers, Inc., 815 A.2d 1045, 1050 (Pa. Super. 2003) (citation omitted).   The

purpose of these doctrines is to protect the reasonable expectations of one who relies on another's

course of conduct.  Doppler v. Doppler, 393 Pa. Super. 600, 608-09 (1990) (citation omitted).

Under Pennsylvania law, the claimant need not allege the exact, express "promise" in order to

state a cause of action for estoppel. CMR, 2008 WL 4055823 (citing Cornell Companies, Inc. v.

Borough of New Morgan, 512 F.Supp.2d 238, 266 (E.D.Pa.2007); Straup v. Time Herald, 283 Pa.

Super. 58, 423 A.2d 713, 720 (Pa.Super.1980) (describing estoppel as "a flexible doctrine, to be

applied ... as the equities between the parties preponderate")).

Here, however, Dennis has pled the specific promises he relied upon.  As explained above,

Taking Plaintiff's allegations as true, as the Court must, Dennis is not alleging that the Term Sheet itself constitutes the promises he relied upon. Rather, Dennis alleged that the Term Sheet formed the basis for discussion and that, thereafter, the parties concluded their negotiations and mutually entered into a binding oral Employment Agreement in October 2014 that encompassed most of the Term Sheet's terms with the exception of two items in the Term Sheet relating to salary and Dennis's location. See Am. Compl. ¶ 19-20, 30, 63. Dennis further alleged that, with respect to salary and location that: (i) "that Dennis would be paid $250,000 a year plus other expenses (including an office) to address the tax consequences and his personal costs of going to Los Angeles to establish the West Coast office for EF Hutton providing EF Hutton a national presence from coast to coast"; and, that (ii) "because EFA was to be a "digital" firm, while Dennis may be located in Los Angeles, he could also telecommute and/or maintain a virtual presence with respect to wherever EF Hutton located its primary offices (such as Palm Beach, Florida, Connecticut, or as ultimately was decided, Springfield, Ohio) with travel, if need be, to the location from time to time." See Am. Compl. ¶ 31-33, 63. Further Dennis alleged that the parties agreed that "President, Dennis was to report to the CEO, Christopher, that Dennis's was to plan strategic direction; market the firm to financial advisors and trade, assist the CEO in communicating the firm's message internally and externally, establish compensation, and policies and procedures, and that Dennis was to start after EF Hutton closed on financing sufficient to commence business operations." See Am. Compl. ¶ 30, 63. To the extent that a contract is not found, this count is brought in the alternative, because "EF Hutton intentionally made those promise s, through Christopher, in order to induce Dennis to provide his services as President, and to lend his name and national reputation, to their nascent enterprise" and ", Dennis rendered his services to EF Hutton in reasonable reliance upon their promises that he would be named President and would receive salary, bonuses, equity incentives and other benefits from EF Hutton in connection thereto". At this point, injustice can only be avoided by enforcing the promises.

As alleged in the Am. Complaint, Dennis' reliance is reasonable, based on the allegations he

has made and all reasonable inferences in his favor in the 12(b)(6) context, because the EF Hutton

Defendants' promises were coupled with actions consistent with those promises, including but not

limited to (i) public SEC filings demonstrating the progress of the EF Hutton enterprise, (ii) making

Dennis a director on or about August 29, 2014 and providing compensation related to his director role

and (ii) at the time of incorporation of EFC on or about October 27, 2014, Dennis was named its

President.  See Am. Compl. ¶ 17, 23, 34, 36, 39, 40, 41, 44, 45, 46, 47, 48, 49.  It is also not usual, as a

seasoned business person would know, for a start up to require sweat equity in the anticipation of

benefits until it "closed on financing sufficient to commence business operations" as Dennis expected

would occur here.  See Am. Compl. ¶ 30, 64.

For the foregoing reasons, Dennis has stated a claim upon which relief may be granted and EF

Hutton defendants' Motion to Dismiss Count IV, consequently, should be denied.

With respect to Zamos v. McNeil-PPC, Inc., No. 16-5038, 2017 U.S. Dist. LEXIS 2275, *14-

15 (E.D. Pa. Jan. 5, 2017) , cited by the EF Hutton Defendants to argue against the inclusion of

equitable estoppel in this count, it is distinguishable in that here, Dennis has not pled them as separate

claims.  Rather Dennis has pled promissory estoppel as the affirmative claim and included promissory

estoppel as grounds to prevent the EF Hutton Defendants from denying the existence of the

Employment Agreement.  To the extent the Court determines that this needs to be more specifically

pled, versus being a reasonable inference in Dennis's favor, then Dennis respectfully requests leave to

file an amended pleading to cure any defects that the Court may identify.

### 7. In Counts VI and VII Dennis Has Stated A Claim For Unjust Enrichment And/Or Quantum Meruit Upon Which Relief May Be Granted

The EF Hutton  Defendants have also moved with respect to Counts VI and VII of Dennis's

Amended Complaint (unjust enrichment and quantum meruit asserted by Dennis against the EF Hutton

Parties) for failure to state a claim upon which relief can be granted. In so doing, the EF Hutton Parties once again engage in a myopic reading of the Amended Complaint and wholly ignore – and do not address – the factual allegations made by Dennis in the body of the Amended Complaint.

While this claim is of course not applicable in the event that enforceable contracts are found, this claim was required to be asserted in the alternative to the extent that the trier of fact fails to find any enforceable contract. See Am. Compl. 102 and 106, stating that they are brought in the alternative. As such, pleading in the alternative given these possible scenarios is appropriate. See also Kensington Hosp., 760 F. Supp. at 1135 (stating " Federal rules allow pleading in the alternative. Courts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment.")

A claim for unjust enrichment arises from a duty imposed by the Courts "in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001).

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value… In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

Styer v. Hugo, 422 Pa. Super. 262, 619 A.2d 347, 350 (1993) (quotation marks omitted). It is conceded that Count VII for Quantum Meruit may duplicative, under Pennsylvania law, as to Count VI so long as the Court construes Count VI to apply both to the value of benefits and services.

The factual allegations of the Amended Complaint are sufficient to state such a claim. The EF Hutton Defendants fail to distinguish, as Dennis has alleged, that the services rendered as Director are different from the services he rendered as President. See Am. Compl. ¶ 51 (stating "In contrast to the

high level supervisory-only governance type duties associated with Dennis' Directorship role, in his capacity as President, Dennis worked tirelessly to assist on an almost daily basis with introductions to EF Hutton and Christopher, strategic decisions, acquisition attempts, investments, sales and marketing work, and conference calls with Christopher, with the Board, and with others involved in the nascent EF Hutton enterprise"). His compensation for the services as President was also separate and was to be salary and benefits offered under the Employment Agreement. See Am. Compl. ¶ 20, 30-33. Whereas, as director, he received stock and options. See Am. Compl. ¶ 48-49. To the extent that the EF Hutton parties argue that because Dennis received some benefits as Director means that he did not suffer financial detriment or require further relief to void an injustice, that reasoning is circular. The fact that Dennis may have received some benefits as a Director during the course of his employment does not change the fact that, as alleged, Dennis has suffered financial detriment with respect to his duties as President any more than a worker short changed on his or her wages does not suffer financial detriment simply because he or she received some of the wages promised. Relief is necessary to avoid an injustice by ensuring that all of the promised benefits are awarded. Further, to the extent that the EF Hutton Defendants point to an acknowledge that, as of May 4, 2016, he had not received any compensation as President, that does not change the fact of his expectation that he would eventually do so pursuant to the terms of the Employment Agreement. Consequently, to the extent that the Court should find that the Employment Agreement does not exist, he has still conferred a benefit for two years of services as President for which he has received no compensation and he had expected to receive compensation at its conclusion as agreed by the parties. The acceptance and retention of such benefits under such circumstances that it would be inequitable for the EF Hutton Defendants to retain the benefit without payment of value.

For the foregoing reasons, Dennis has stated a claim upon which relief may be granted and EF Hutton defendants' Motion to Dismiss Count IV, consequently, should be denied. If for whatever

reason, the Court feels that allegations require more specificity or are defective, then Dennis

respectfully requests leave to file an amended pleading to cure any defects that the Court may identify.

## V.        CONCLUSION

For the foregoing reasons, the EF Hutton Defendants' Motion should be denied.  If for

whatever reason, the Court feels that allegations require more specificity or are defective, then Dennis

respectfully requests leave to file an amended pleading to cure any defects that the Court may identify.

See Chocolate Confectionary, 602 F. Supp. 2d at 575 (courts should generally grant plaintiffs leave to

amend their claims before dismissing a complaint that is merely deficient) (citing Grayson v. Mayview

State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) and Shane v. Fauver, 213 F.3d 113, 116–17 (3d

Cir.2000)).

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**


s/ Albert M. Belmont, III

Dated:  February 24, 2017          BY:    _____
                                          George Bochetto, Esq.
                                          Albert M. Belmont, III, Esq.